In re ALCHAR HARDWARE, CO. and Knight & Wall Co. Inc., Debtors.

Jeanette TAVORMINA, Plaintiff,

v.

FIR, INC., Lawrence Lyman and Elias J. Hakim, Jr., Defendants.

Bankruptcy No. 82–01215–BKC–TCB.
Adv. No. 83–0501–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

Aug. 31, 1983.

Arthur Weitzner, Robert P. Barnett, Miami, Fla., for trustee.

Lawrence Lyman, St. Petersburg, Fla., for Lawrence Lyman and FIR.

V.J. Voorheis, Jr., Fort Lauderdale, Fla., for Hakim.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The trustee seeks judgment for $50,000 against FIR, Inc., and Lyman and a judgment against Hakim for $25,000 based upon events incident to the trustee's unsuccessful efforts to sell certain property in Tampa which was owned by the debtor, Knight & Wall, Co., first to FIR, then later to Hakim. The property is now in the process of being sold to another party.

FIR and Lyman have answered (C.P. Nos. 6, 7) and counterclaimed (C.P. No. 8) against both the trustee and her attorney. The counterclaim has been dismissed as to the trustee's attorney, who was never a party. Hakim has also answered (C.P. No. 18) and counterclaimed (C.P. No. 20) and has crossclaimed against FIR and Lyman. (C.P. No. 17). The matter was tried on August 18.

A threshold issue, raised by Hakim, is whether this court has jurisdiction. That issue was heard on August 15. Hakim withdrew his objection. This court has jurisdiction to hear this matter as a "related proceeding" under the Emergency Rule. § (d)(3)(A). In addition, each of the parties has consented before me that this court may enter judgment (rather than a proposed judgment) as is authorized by § (d)(3)(B) of that Rule.

The property in question is a tract of about 22.79 acres partially improved with warehouses, a parking lot and a rail spur on that part of the property (about 37.5 percent) which is presently zoned for industrial use. The rest of the property, presently zoned for agriculture, is uncleared and unused. The property is surrounded by industrial property and there is every reason to believe that the entire property could be rezoned for industrial use.

In December, 1982, Lyman, an attorney, submitted a written offer on behalf of FIR to buy the property for $1,995,000. Consistent with 11 U.S.C. § 363(b), the trustee sought leave from the court to accept the offer (as modified by mutual agreement between the two parties). After notice and a hearing, the trustee, on January 19, 1983, was "authorized to enter into the proposed executory contract ... as modified" and FIR was ordered to deposit $50,000 with the trustee forthwith. FIR's offer was accom-

panied by a $100 deposit and stipulated payment of a $50,000 deposit "upon acceptance."

On February 3, 1983, Lyman gave the trustee, on FIR's behalf, his personal check for $50,000. The check was dishonored and the $50,000 remains unpaid.

FIR and Lyman excuse their breach on five grounds.

■ (1) They say, first, that the offer was never accepted, because the trustee never signed and delivered an instrument of acceptance. I disagree. The offer was expressly "subject to approval by Bankruptcy Court." The trustee's application for leave to accept the offer as modified with FIR's consent, coupled with the court's authorization, ratification and confirmation of the sale (C.P. No. 169), all of which was done with FIR's knowledge and participation, bound the trustee and constituted acceptance of the modified offer.

■ (2) They argue next that there was no contract because the property was never described or identified with sufficient specificity. Again I disagree. Lyman's offer makes reference to a legal description which he failed to deliver. However, the trustee filed with the court a specific metes and bounds description (C.P. No. 161), supplying Lyman's omission, and I find that there was never any confusion on the part of the parties that this was the intended legal description of the property.

■ (3) They next say that the contract characterized the property as "twenty-four (24) acres more or less" and it was, in fact, 1.21 acres (five percent) less. The deficiency does not exceed the permissible latitude of the contractual characterization. Under Florida law, the purchase price could be adjusted at closing for any deficiency in the acreage. 33 *Fla.Jur.*, Vendor and Purchaser, § 60; *Phifer v. Steenburg,* Fla. 1914, 66 Fla. 555, 64 So. 265.

■ (4) They next argue that the trustee never delivered a title guarantee. FIR's offer had stipulated that the trustee would deliver a "title guarantee" within five days from the date of the contract. However, this provision was mutually modified to provide:

"Concerning title, the Trustee will convey by Trustee's Deed which will be good and marketable."

Since FIR has never tendered its deposit, it never became entitled to performance of this condition of the contract. This record does not demonstrate that the trustee could not deliver "good and marketable" title.

■ (5) They contend, finally, that the trustee or her attorney knew that FIR planned to use the property for purposes prohibited by agricultural zoning and that the trustee and her attorney represented that the existing zoning was compatible with that intended use. In fact, the portion zoned for agriculture would not permit such use. The evidence is in conflict. I find that neither the trustee nor her attorney ever made a written or oral representation as to the existing zoning on the property until December 27, 1982, when they filed Exhibits In Conjunction With Proposed Sale of Real Property when they sought and obtained authorization to sell the property to FIR. Those exhibits included an appraisal which described the existing zoning accurately.

The trustee, who delegated this matter to her attorney, never knew the zoning and there is no testimony that she made any representation relied upon by anybody. The witnesses who have testified that they relied upon her attorney's oral representation have a financial interest in this matter.

Even if there had been a representation that the entire tract was presently zoned for industrial or commercial use, it is clear (at least in Florida) that such a misrepresentation would not be ground for recission.

"A misrepresentation by a vendor of land as to matters that can be ascertained by an examination of public records is not ordinarily actionable...". 33 *Fla.Jur.,* Vendor and Purchaser, § 43.

This rule applies to representations regarding zoning. *Turvey v. Kulazenka,* Fla.App. 1977, 341 So.2d 551. Furthermore, the rule would be particularly applicable where the

title promised is "subject to zoning", as was the case here.

I find that there was a contract between FIR and the trustee and that there is no basis for its recission. Similarly, there is no basis for the counterclaim asserted by FIR and Lyman against the trustee based on the contentions discussed above.

■ The contract stipulates that:

"If buyer fails to perform any of the covenants of this contract, all money paid pursuant to this contract by the buyer as aforesaid shall be retained by or for the account of the seller as consideration for the execution of this contract and as agreed and liquidated damages and in full settlement of any claims for damages."

The trustee's remedy is the retention of the $100 she was paid. She has no cause of action for the $50,000 promised, but never paid. As stated in *Stewart v. Mehrlust,* Fla.App.1982, 409 So.2d 1085, 1086:

"When a real estate contract provides that if a sale is not closed because of the fault of the buyer, the deposit paid under the contract is to be retained by the seller, the seller cannot recover a deposit not actually made. *Campbell v. Salman,* 384 So.2d 1331 (Fla. 3d DCA 1980)."

The trustee has no cause of action against Lyman, whose bad check was tendered on behalf of his client, FIR, and accepted as such.

■ On February 9, 1983, several days after Lyman's check had bounced, FIR assigned its contract to Hakim and Hakim and the trustee entered into a Stipulation for Modification of Order Confirming Sale of Property (C.P. No. 177), in which Hakim agreed to pay the trustee $50,000 in consideration of a 60 day extension of the assigned contract, to April 19, 1983. Hakim paid $25,000. On February 24, fifteen days later, Hakim demanded return of the partial deposit on the same grounds which have already been discussed.

I construe the Stipulation between Hakim and the trustee to be Hakim's offer to buy and the trustee's offer to sell, subject to this court's approval of the stipulation and authorization to accept the offer. The trustee's motion for such approval and authorization was heard on March 14. At that point, the offer had not been accepted.

The order of March 23 (C.P. No. 188) following that hearing was prepared by the trustee's attorney. It "revocated" the earlier order confirming sale to FIR and authorized the trustee to re-offer the property for sale. It expressly, however, reserved all right and liabilities between FIR, Lyman and Hakim for subsequent determination. *Hakim's offer was never accepted.*

It follows, of course, that Hakim is entitled to a refund of his deposit and that the trustee has no cause of action against Hakim for anything.

Hakim's counterclaim against the trustee, bottomed on essentially the same ground and proof as the counterclaims of FIR and Lyman, fails for the same reasons those have.

Hakim's crossclaim against FIR and Lyman fails because he sought only indemnity from them for any sums he is obligated to pay the trustee.

As is required by B.R. 9021(a), a separate judgment will be entered dismissing with prejudice the complaint, all three counterclaims and the crossclaim. Each party shall bear its own costs.

During the trial of this matter, the defendants Lyman and Hakim, as well as several other interested witnesses, testified that both the trustee and her attorney demanded that Arthur Ennacho be given participation in FIR's proposed business either as a principal or as an employee without any assigned duties. This serious charge, though it had no direct bearing on the issues presented, was heard because it involved court officers.

Neither the trustee nor her attorney had any connection with this Tampa resident until he presented himself as a broker or buyer (it never became clear which) of the property in question. The trustee imprudently entrusted him with a key to the warehouse so he could show the property to

others. He represented to the defendants that he had considerable influence over the trustee. They were persuaded and promised him employment.

I accept the denials of the trustee and her attorney that they ever asked for consideration of Ennacho by the defendants or that they knew he was doing so in their names. I reject the contrary testimony. It is significant to me that not one of the parties nor witnesses brought these charges to my attention until the trial of the trustee's claims against them, though each knew that the trustee served this court and must have known that no court would tolerate this conduct. Each of these officers has served this court for many years without any charge that either has abused his position. I have referred these charges to the Clerk (who is responsible for local supervision of trustees) for his further investigation.