749 F.2d 146
 12 Bankr.Ct.Dec. 690, Bankr. L. Rep. P 70,158
 In re TIANA QUEEN MOTEL, INC., Todem Homes, Inc., Anthony
DeMarco, Debtors.
A. ILLUM HANSEN, INC., Plaintiff-Appellee,
v.
TIANA QUEEN MOTEL, INC., Todem Homes, Inc., Anthony DeMarco,
Defendants- Appellants.*
In re Petition for Writ of Mandamus.
A. ILLUM HANSEN, INC., Stanley Weisz, Phyllis H. Weisz and
Stanley Weisz, P.C. Retirement Plan, Petitioners,
v.
Anthony DeMARCO, Respondent.
 Nos. 3, 94 and 274, Dockets 83-5079, 83-5067 and 84-3063.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 9, 1984.
Decided Nov. 29, 1984.
 
 Joseph Cyr, New York City (Donovan, Leisure, Newton & Irvine, Allan R. Freedman, New York City, of counsel), Anthony DeMarco, New York City, in a separate brief, for defendants-appellants.
 Karen Carter Caso, Garden City, N.Y. (Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., of counsel), for plaintiff-appellee.
 Neil P. Forrest, New York City (Cleary, Gottlieb, Steen & Hamilton, New York City, of counsel), for petitioners.
 Edward J. Swan, New York City, for respondent.
 Before FEINBERG, Chief Judge, and KEARSE and PIERCE, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 Tiana Queen Motel, Inc. (Tiana Queen), Todem Homes, Inc. and Anthony DeMarco appeal from an order of the United States District Court for the Southern District of New York, 34 B.R. 357, Robert L. Carter, J., entered in September 1983, rejecting appeals from several bankruptcy court orders. The first three, by Bankruptcy Judge John J. Galgay, converted the Chapter 11 proceedings then pending for the three appellants to proceedings under Chapter 7 of the Bankruptcy Code; another order, by Bankruptcy Judge Prudence B. Abram, refused to stay an auction of certain assets in the three debtors' estates; and the last, by Bankruptcy Judge Galgay, authorized Dorothy Eisenberg, the Chapter 7 trustee in bankruptcy, to accept an offer to purchase assets.
 
 
 2
 In a related case, No. 84-3063, argued to us along with the appeal, A. Illum Hansen, Inc., Stanley Weisz, Phyllis H. Weisz and Stanley Weisz, P.C. Retirement Plan--all secured creditors of Tiana Queen--petition for a writ of mandamus directing Judge David N. Edelstein, of the Southern District of New York, to vacate an order restraining all actions with respect to any property in which Anthony DeMarco, or any entity in which Anthony DeMarco is a principal, has an interest. The secured creditors are joined in their petition by the Chapter 7 trustee.
 
 
 3
 For the reasons stated below, we affirm Judge Carter's order; on the petition for a writ of mandamus, we remand for further proceedings consistent with this opinion.
 
 
 4
 I. Appeal from Judge Carter's Order in the Bankruptcy Case
 
 A. Facts
 
 5
 On July 17, 1981, Anthony DeMarco and two New York corporations in which he was and remains the sole stockholder, officer and director--Tiana Queen and Todem Homes--filed separate petitions for reorganization under Chapter 11 of the Bankruptcy Code. Resort to Chapter 11 was precipitated by a host of legal and financial difficulties that beset three properties belonging to DeMarco and the corporations. Tiana Queen owned land and a residential home in Lloyd Harbor, New York, and a parcel of land in Southampton, New York, upon which DeMarco sought to build a motel. To finance this construction, Tiana Queen had borrowed $310,000 from A. Illum Hansen, Inc., Stanley Weisz, Phyllis H. Weisz and Stanley Weisz, P.C. Retirement Plan, securing these loans with mortgages on both the motel and home properties. The Town of Southampton, however, alleged that the scope of the building permit had been exceeded. Litigation ensued, and in the meantime, the project came to a halt. At the time the three Chapter 11 petitions were filed, Tiana Queen faced judgments of foreclosure obtained by the secured creditors, who had received no payments since 1977.
 
 
 6
 The only asset of Todem Homes was an option to repurchase a seventeen-acre parcel of land in Lloyd Harbor, New York, which was being contested in the New York state courts. Todem Homes had been successful in the Appellate Division of the State of New York, Freidus v. Todem Homes, Inc., 80 A.D.2d 575, 435 N.Y.S.2d 786 (App.Div.2d Dept.1981), but an appeal was still pending in the New York Court of Appeals. When the petitions were filed, DeMarco and the two corporations also faced a number of judgments obtained by unsecured creditors, many of whom had represented DeMarco in his legal battles. The largest of these judgments dated back to December, 1979. The only significant assets in DeMarco's estate were his interests in the two corporations.
 
 
 7
 Dissatisfied with the progress of the reorganization proceedings, the creditors committee petitioned the bankruptcy court in February 1982 to convert the Chapter 11 proceeding for Tiana Queen into a Chapter 7 liquidation. Shortly thereafter, the debtors responded with plans of reorganization for all three estates. In March 1982, the creditors committee filed a motion to convert the Todem Homes Chapter 11 proceeding. Thereafter, in several hearings stretching over a period of many months, the creditors urged liquidation before Judge Galgay. Finally, at the conclusion of a hearing on October 26, 1982, over the debtors' objections, the judge ordered the conversion of the three Chapter 11 cases to Chapter 7 liquidations. The debtors appealed from that order to the district court, and the case was assigned to Judge Carter.
 
 
 8
 In November 1982, Dorothy Eisenberg was appointed Chapter 7 trustee for Tiana Queen, Todem Homes and DeMarco. In early February 1983, the trustee gave notice of her intention to auction the Tiana Queen motel site and residential property and the Todem Homes option. DeMarco, apparently acting pro se, requested Bankruptcy Judge Abram to stay the auction, and, upon her refusal to do so, again appealed to the district court. The auction was held on February 23, 1983, and Robert Mantin made the highest bid for the Tiana Queen motel site. In June 1983, Judge Galgay authorized the acceptance of this bid; the debtors appealed to the district court from this order as well.
 
 
 9
 In September 1983, Judge Carter rejected the debtors' attack on the three orders. The district court held that the conversion orders were fully consistent with the requirements of 11 U.S.C. Sec. 1112(b), that the appeal from Judge Abram's denial of a stay was moot and that the trustee could accept Mantin's bid. This appeal followed.
 
 B. The Conversion Orders
 
 10
 Under the Bankruptcy Code, 11 U.S.C. Sec. 1112(b), a Chapter 11 reorganization proceeding may be converted to a Chapter 7 liquidation case only upon the request of a party in interest, after notice and hearing, and for cause. Appellants contend that the district court erred in affirming the conversion orders because the bankruptcy court failed to comply with these requirements. We shall discuss each of them in turn.
 
 
 11
 In the Tiana Queen and Todem Homes Chapter 11 proceedings, counsel for the official creditors committees filed written conversion petitions in February 1982 and March 1982, respectively. Though these petitions do not appear to have been signed, appellants do not dispute that motions for conversion were made in both these cases. Appellants do argue, however, that no such motion was ever made with respect to DeMarco's personal estate. Appellee replies that during the course of the various hearings DeMarco's attorney suggested the inclusion of the DeMarco estate in the conversion hearings and the United States Trustee made such a motion.
 
 
 12
 We have recently held that a bankruptcy judge may not on his own motion convert a Chapter 11 reorganization into a Chapter 7 liquidation. In re Gusam Restaurant Corp., 737 F.2d 274 (2d Cir.1984). In reaching that result, we relied on the language of Sec. 1112(b), reproduced in relevant part in the margin,[1] and the legislative history. However, we did not reach the question whether an oral motion to convert by a party would suffice. Although there is no doubt that a written motion to convert will help prevent confusion and is preferable, we see no persuasive reason here to insist upon a document. The essential command of Sec. 1112(b) is that the court and all parties concerned be placed on notice of the nature of the motion and the identity of the movant. On the record before us, we believe that this was done.
 
 
 13
 In this case, the inextricable relationship between DeMarco and the two corporations he owned may have been responsible for the tendency of many of the participants in the conversion hearings to be imprecise in their references to the three estates involved in the bankruptcy proceedings. However, our review of the hearing transcripts persuades us that a party in interest orally moved to convert DeMarco's personal estate and that, well before the October 26, 1982 conversion orders, all parties concerned assumed that conversion of the DeMarco proceeding along with the other two was being considered.
 
 
 14
 The district court found that the motion requirement of Sec. 1112(b) was satisfied with respect to DeMarco's proceeding because conversion was "specifically requested" by DeMarco's counsel at a hearing on August 31, 1982. The colloquy on which the district court based its conclusion was as follows:
 
 
 15
 THE JUDGE: If there aren't acceptances, I can find that there is no prospect of a plan ever being accepted here and I can either dismiss the proceedings or convert it to Chapter 7.
 
 
 16
 That will be eleven o'clock a.m.
 
 
 17
 MR. WEISZ: [Attorney for the secured creditors] Will this Order be entered in both Tiana Queen and Totem [sic] Homes?
 
 
 18
 THE JUDGE: Yes.
 
 
 19
 MR. DRESSNER: [Attorney for DeMarco, Tiana Queen and Todem Homes] We can have it in DeMarco, there is a personal Chapter 11 too.
 
 
 20
 MR. GILMARTIN: [Attorney for the creditors committee] He doesn't own any non-exempt property.
 
 
 21
 MR. DRESSNER: But he owns stock in both corporations.
 
 
 22
 While the comments of DeMarco's attorney certainly lend support to the district judge's conclusion that DeMarco's attorney requested conversion, it is not necessary to reach that issue. Earlier in the same hearing, David H. Gilmartin, a representative and member of the creditors committee for each of the three estates, stated:
 
 
 23
 With the Court's permission, I'd like to see if I can't assist in bringing these three proceedings into some realistic focus.
 
 
 24
 In doing so, I feel that my main presentation will focus both on the main motion to convert to Chapter 7 these three Debtors in Chapter 11 proceedings and also on the cross motion of secured mortgage creditor Weisz to conduct a sale of assets under this Court's supervision. (emphasis added).
 
 
 25
 If we had the slightest concern that appellants had not been placed on notice of the pendency of a motion to convert the DeMarco proceedings, we would not hesitate to vacate the DeMarco conversion order. However, the comment by DeMarco's attorney noted above, while arguably not in itself sufficient to constitute a motion, does show that he recognized that the conversion of all three estates was being considered. In addition, we simply do not find any persuasive evidence that the parties thought that DeMarco's personal Chapter 11 proceeding should not be treated in the same way as the other two. This is not hard to understand, since the only significant assets in DeMarco's estate, as already indicated, were his interests in Tiana Queen and Todem Homes.
 
 
 26
 Under the circumstances, we also need not decide whether, as the Chapter 7 trustee contends, the "party in interest" requirement of Sec. 1112(b) was satisfied by the United States Trustee as a result of a colloquy in open court, reproduced in the margin.[2] There is support for the proposition that the United States Trustee should be considered a "party in interest" within the meaning of Sec. 1112(b). See In re Commercial Finance Corp., 16 B.R. 98 (Bankr.D.D.C.1981); 5 Collier on Bankruptcy p 1112.03, at 1112-11 to -12 (15th ed. 1984). Here, however, we consider the United States Trustee's statement merely as further evidence of the assumption, shared by all parties in at least the last three hearings before Judge Galgay, that the conversion of all three estates was under consideration.
 
 
 27
 Appellants next argue that the conversion orders were entered without "notice and a hearing," in violation of Sec. 1112(b). We have already noted, however, that the record reveals that appellants were on notice that the conversion of all three estates was being considered. Moreover, there were a series of hearings over a period of several months at which appellants had ample opportunity to argue against conversion. In the course of these hearings, the debtors, the secured and unsecured creditors and the United States Trustee gave their views on the critical issues before the bankruptcy court--the likelihood that the three estates could be rehabilitated, the condition of the estates and the prejudice to the creditors that further delay might cause. These issues were most dramatically framed on October 26, 1982, at a hearing after which Judge Galgay signed the conversion orders.
 
 
 28
 Appellants rely on Banque de Financement, S.A. v. First National Bank of Boston, 568 F.2d 911 (2d Cir.1977), for the proposition that Sec. 1112(b) requires the holding of a full evidentiary hearing prior to the entry of a conversion order. This reliance is misplaced. The court in Banque de Financement, which involved the predecessor statute to Sec. 1112(b), remanded the case for an evidentiary hearing because the bankruptcy court had failed to consider sufficiently the alternatives to dismissing the debtor's Chapter XI petition. We find no such specific need for further development of the record here.[3]
 
 
 29
 Before reviewing the basis for the conversion orders, we also note and reject appellants' argument that the district court should have reversed the conversion orders, because the bankruptcy judge did not make explicit findings of fact and conclusions of law. Bankruptcy Rule 752, in effect at the time of the proceedings before Judge Galgay, provided that in cases tried without a jury, "the court shall find the facts specially and state separately its conclusions of law thereon." However, as we noted in Matter of Ollag Construction Equipment Corp., 578 F.2d 904 (2d Cir.1978), "reversals under Bankruptcy Rule 752 are appropriate only when the reviewing court cannot determine the basis of the ruling below," id. at 909 (footnote omitted). See In re D.H. Overmyer Co., 510 F.2d 329, 333 (2d Cir.1975). It is true, as appellants contend, that the bankruptcy judge did not make explicit findings of fact and conclusions of law. Nevertheless, the transcripts of the hearings sufficiently disclose the legal and factual bases for the conversion orders to enable this court to review them.
 
 
 30
 It does not appear that the crucial facts underlying the conversion orders were ever in dispute. The debtors did frequently clash with the creditors on the question of the value of the three properties owned by DeMarco and his corporations, but the bankruptcy court's determination was not based upon its assessment of whether the debtors could obtain sufficient funds through a hypothetical sale of some or all of these properties at some future time. Rather, the court acted because of the manifest inability of the debtors to make good upon the frequent assurances of imminent sales made over the course of the fifteen months that passed between the filing of the Chapter 11 petitions and the entry of the conversion orders. Even appellants' claims that the Tiana Queen motel site was actually appreciating in value during this entire period cannot obscure their inability to consummate the sales that they promised. We do not doubt that the promises were made in good faith, but none was realized. On a number of occasions, the bankruptcy judge postponed entry of conversion orders because substantial cash infusions were in the offing. Finally, at a hearing in early October 1982, the debtors' counsel indicated that DeMarco had received written offers totalling $320,000 for assets owned by Todem Homes and would enter into formal contracts of sale within twenty days. Considering this prospect, Judge Galgay allowed the debtors until October 26 to formalize the sale, ordering the United States Trustee to prepare conversion orders that the judge would sign if no sale had been consummated by that date. On October 26, debtors' counsel admitted that the two parcels had not yet been sold and sought more time. At the urging of the United States Trustee and the attorneys for the secured and unsecured creditors, Judge Galgay then signed the conversion orders in all three related cases.
 
 
 31
 As the district court noted, the transcripts of the hearings make clear that Judge Galgay based his conversion orders upon his conclusion that, in essence, three of the "causes" for conversion enumerated in Sec. 1112(b) applied:
 
 
 32
 (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
 
 
 33
 (2) inability to effectuate a plan;
 
 
 34
 (3) unreasonable delay by the debtor that is prejudicial to creditors.
 
 
 35
 Over the course of the many hearings in this matter, Judge Galgay became understandably impatient with the failure of the three debtors to demonstrate that their prospects for prompt rehabilitation were based upon anything more substantial than DeMarco's boundless confidence. Finding the debtors to lack the wherewithal necessary to market their properties expeditiously, noting their inability to devise a reorganization plan grounded in reality, and well aware that the debtors' repeated pleas for more time were at the expense of secured creditors, who had not received any payments since 1977, and of unsecured creditors with sizeable claims, Judge Galgay ordered liquidation of the three estates.
 
 
 36
 We cannot say that the judge's conclusion that cause for conversion existed was unjustified. In light of the debtors' proven record for overestimating their chances of success, the judge could conclude that the "best interest of creditors and the estate[s]," Sec. 1112(b), would be served by conversion. The purpose of Sec. 1112(b) is not to test a debtor's good faith; it is to provide relief where the debtor's efforts, however heroic, have proven inadequate to the task of reorganizing his affairs effectively within a reasonable amount of time. We do not wish to establish a fixed amount of time to be allowed a debtor; we hold only that, on this record, where 15 months had elapsed from the filing of Chapter 11 petitions to the bankruptcy judge's conversion orders, the judge's decision was a justifiable exercise of his discretion.
 
 
 37
 C. Other Orders Appealed to the District Court
 
 
 38
 The three debtors also appeal from the district court's dismissal of their appeal from Bankruptcy Judge Abram's refusal to stay the auction by the Chapter 7 trustee of property belonging to their estates. We agree with the district court that the holding of the auction rendered moot any appeal from Judge Abram's order. Finally, we see no basis for overturning the district court's rejection of the debtors' appeal from Judge Galgay's order of June 7, 1983, authorizing the trustees to accept the Mantin offer of $254,000 at the auction of the Lloyd Harbor residence. That offer was well in excess of the appraisal made by the expert retained by the trustee and was the highest received.
 
 II. Mandamus Petition
 A. Facts
 
 39
 In late June 1983, while the appeals of Tiana Queen, Todem Homes and DeMarco from the bankruptcy court orders were still pending in the district court, DeMarco filed an action pro se in that court under 42 U.S.C. Sec. 1983, naming as defendants Judge Galgay, the Chapter 7 trustee, her counsel and her real estate advisor, the United States Trustee, two of the secured creditors of Tiana Queen, DeMarco's former attorneys who were also secured creditors of his estates, officials of the Town of Southampton and others. The action alleged, in essence, that defendants, acting in a conspiracy, had deprived DeMarco of his constitutional rights by blocking his development of the Tiana Queen motel site and by forcing him and his corporations into bankruptcy and liquidation. The case was assigned to Judge Edelstein. At a hearing in July 1983 before the judge, DeMarco, now represented by appointed counsel, argued that the impending liquidation of his three estates was the direct result of this illegal conspiracy and that the court should therefore issue a temporary restraining order staying further bankruptcy proceedings. In August 1983, DeMarco filed an amended complaint, seeking damages of $10,000,000 "and such other further ... relief (including injunctive relief and punitive damages) which the Court deems just and proper"; this complaint dropped Judge Galgay and the two secured creditors as defendants in the action. Thereafter, we are informed, further defendants were dropped, so that the only remaining defendants are various officials of the Town of Southampton.
 
 
 40
 The order of Judge Carter, disposing of the appeals from the orders of the bankruptcy court and discussed in Part I of this opinion, was filed on September 30, 1983. On November 29, 1983, Judge Edelstein issued a restraining order mandating "that no action of any kind by any person, entity, or governmental body shall be taken with respect to any property in which plaintiff, or any entity in which plaintiff is a principal, has an interest." This order has apparently blocked all proceedings in the bankruptcy cases. Seeking to enable the Chapter 7 trustee to proceed with liquidation, the secured creditors of Tiana Queen have petitioned this Court to issue a writ of mandamus directing Judge Edelstein to vacate his stay order. The Chapter 7 trustee has joined in this petition.
 
 B. Discussion
 
 41
 Standards for the issuance of mandamus are strict. See In re Attorney General of the United States, 596 F.2d 58, 62-63 (2d Cir.), cert. denied, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979). Traditionally, the writ has been used only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so," Roche v. Evaporated Milk Association, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), thereby barring a judicial "usurpation of power," DeBeers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945). See also In re Irving, 600 F.2d 1027, 1033 (2d Cir.), cert. denied, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979).
 
 
 42
 Petitioners (the secured creditors and the Chapter 7 trustee), who are apparently not now defendants in the Sec. 1983 action, assert that they meet these strict standards. They argue that the judge had no power to affect their rights in the properties being liquidated in the bankruptcy proceeding because the action against the Southampton officials is wholly unrelated to the bankruptcy cases and petitioners' claims. Petitioners contend that the Sec. 1983 action is an in personam action for damages, whose outcome has no bearing on any interests in the property now under the jurisdiction of the bankruptcy court, that because that property was owned not by the defendants in the Sec. 1983 action but by the plaintiff, the stay order is not necessary to assure that the relief sought in that action will be available to the plaintiff if he succeeds, and that the interim relief granted has insufficient connection with the final relief sought in the Sec. 1983 action. See DeBeers, supra. DeMarco responds that there is a connection between the bankruptcy case and the Sec. 1983 action because the alleged conspiracy caused his financial difficulties and brought about the liquidation of his assets. If that is true, the argument runs, the district court should be able, by injunctive relief, to prevent the conspirators from achieving their object.
 
 
 43
 By so stating DeMarco's position, we do not mean to suggest that we agree with it. The amended Sec. 1983 complaint is essentially a claim for damages and barely mentions injunctive relief. Also, DeMarco has failed to offer any persuasive reason why monetary relief alone could not fully compensate him in the event he wins his Sec. 1983 action. Moreover, the secured creditors, whose claims now allegedly total over $600,000, have waited for seven years to be paid, two bidders who have made deposits on property to be sold in the bankruptcy proceedings are in limbo, and the bankruptcy court is "paralyzed in this case," as Bankruptcy Judge Edward J. Ryan recently put it.[4] In addition, some of the claims in the Sec. 1983 action have already been made or could have been made, see note 3 supra, in the bankruptcy case. Under the circumstances, even on the questionable assumption that he had the power to do so, Judge Edelstein's grant of drastic equitable relief that effectively nullified the disposition of the bankruptcy appeals appears to be unwarranted.
 
 
 44
 The situation is complicated further by the state of the record before us of the proceedings before Judge Edelstein. For example, petitioners claim that the Chapter 7 trustee and the two bidders who have already made down payments on property have vainly attempted to move in the district court for modification of the restraining order, but the judge has refused to allow the former to file her papers and the latter to make a motion and to be heard. We do not know whether this is so, and on this record we are unable to assess the nature and outcome of these efforts. We are therefore hampered in determining whether resort to an extraordinary writ is appropriate here.
 
 
 45
 Under the circumstances, we think it best to remand this petition to the district court so that petitioners may immediately request relief there. Any application to Judge Edelstein to modify his restraining order should be made within ten days of the issuance of our mandate, which shall issue forthwith. In the event that such application is denied or is not acted upon within 30 days after filing, petitioners may again seek relief in this court by way of mandamus or appeal, provided that they act with dispatch, and the matter shall be referred to this panel, if practicable.
 
 
 
 *
 The caption is the one used by DeMarco when filing his pro se appeal to the district court. The real appellee is Dorothy Eisenberg, the chapter 7 trustee
 
 
 [1]
 Section 1112(b) provides, in relevant part, as follows:
 [O]n request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including--
 (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
 (2) inability to effectuate a plan;
 (3) unreasonable delay by the debtor that is prejudicial to creditors;
 ....
 
 
 [2]
 MR. LIPSHIE: [Attorney for the creditors committee] Your Honor, I understand the two motions to convert, one in Totem [sic] Homes, one in Tiana Queen to a Chapter 7, are items on before Your Honor today
 I think Your Honor has heard in the past several hearings, all the arguments that can be made and I don't know of any reason why it should be put off any further.
 THE JUDGE: Who is the moving party on the conversion?
 MR. LIPSHIE: The Creditors Committee in each case.
 MR. BLACKSHEAR: [United States Trustee] The U.S. Trustee has joined with three motions, Anthony DeMarco personally.
 Transcript of October 26, 1982, at 2-3 (emphasis added).
 
 
 [3]
 Appellants also argue that the conversion orders deprived them of property without due process. Appellee claims that the argument was not made in the bankruptcy court or in the district court. In any event, our conclusion that the conversion orders were entered in compliance with the procedural requirements of Sec. 1112(b) disposes of appellants' contention
 
 
 [4]
 After Judge Galgay's untimely death, the Chapter 7 cases were apparently assigned to Judge Ryan