In re TODEM HOMES, INC., Debtor.

Bankruptcy No. 81 B 11421 (TLB).

United States Bankruptcy Court,
S.D. New York.

Aug. 5, 1985.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C. by Karen Carter Caso, Garden City, N.Y., for trustee.

Angel & Frankel, P.C. by Ira R. Abel, New York City, for Gerald Resnick.

Dresner & Henle by Byron Dresner, New York City, for debtor.

David A. Gilmartin, pro se.

## OPINION AND ORDER ON MOTION TO COMPEL TRUSTEE TO TRANSFER TITLE

TINA L. BROZMAN, Bankruptcy Judge.

This controversy is the latest in a series involving Anthony DeMarco, Dorothy Eisenberg, as trustee in bankruptcy of Mr. DeMarco and of two corporations which he owns, and purchasers of various properties from the trustee. Gerald A. Resnick ("Resnick"), the successful bidder at an auction sale of the trustee's interest in an option for the purchase of certain land, moves to compel the trustee to transfer the option contract to him in accordance with the terms of a final order which she procured authorizing her to do so. The trustee asks this court to vacate the order confirming the sale so as to allow her to accept an offer for the purchase of title to, rather than the option contract for, the land, which offer, if realized, would probably yield a higher return to the estate than will Resnick's offer. DeMarco joins in the trustee's request to vacate the order but asks the court to accept an offer made to him, in the guise of the debtor Todem Homes, Inc., for the sale of title to the property. The material facts are not in dispute.[1]

FACTS

On July 17, 1981, Mr. DeMarco and two New York corporations in which he was

---

1. DeMarco, purportedly in support of the trustee's application to vacate the order, had asked the court to permit him to introduce evidence which related to alleged defects in the trustee's notice of sale. At the time that he made this request DeMarco was, and remains, restrained by an order of the district court (Edelstein, J.)

and remains the sole stockholder, officer and director—Tiana Queen Motel, Inc. ("Tiana Queen") and Todem Homes, Inc. ("Todem Homes")—filed separate petitions for reorganization under Chapter 11 of the Bankruptcy Code.[2] Resort to chapter 11 was precipitated by a host of legal and financial difficulties that beset three properties belonging to the corporations.

Tiana Queen owned land and a residential home in Lloyd Harbor, New York, and a parcel of land in Southhampton, New York, upon which DeMarco sought to build a motel. To finance the construction of the motel, Tiana Queen had borrowed funds, securing the loans of $310,000 with mortgages on both the motel site and the home. The town of Southampton, however, alleged that the scope of the building permit had been exceeded. Litigation ensued and the project came to a halt. At the time that the three chapter 11 petitions were filed, Tiana Queen faced judgments of foreclosure obtained by the secured creditors, who had received no payments since 1977.

The only asset of Todem Homes was an option to repurchase a seventeen-acre parcel of land in Lloyd Harbor, New York, which was being contested in the New York State courts. Todem Homes had been successful in the Appellate Division of the State of New York, *Freidus v. Todem Homes, Inc.,* 80 A.D.2d 575, 435 N.Y.S.2d 786 (2d Dep't 1981) but an appeal was still pending in the New York Court of Appeals at the time of the chapter 11 filing.

When the petitions were filed, DeMarco and the two corporations also faced a number of judgments obtained by unsecured creditors, many of whom had represented DeMarco in his legal battles. The largest of these judgments dated back to December, 1979. The only significant assets in Mr. DeMarco's personal estate were his interests in the two corporations.

Dissatisfied with the progress of the reorganization proceedings', the creditors' committee petitioned the bankruptcy court in February 1982 to convert the Tiana Queen chapter 11 case into a chapter 7 liquidation. Shortly thereafter, the debtors responded with plans of reorganization for all three estates. In March 1982, the creditors' committee filed a motion to convert the Todem Homes chapter 11 case. Thereafter, in several hearings stretching over a period of many months, the creditors urged liquidation before Bankruptcy Judge Galgay, to whom the cases were then assigned.[3] Finally, at the conclusion of a hearing on October 26, 1982, and over the debtors' objections, the judge ordered the conversion of the three chapter 11 cases to chapter 7 liquidations.[4] DeMarco, acting

---

dated March 20, 1985 from making any motion in a civil rights action commenced by DeMarco against a variety of persons including the bankruptcy judge originally assigned the case or "in any matter ancillary to the proceedings herein" without first obtaining leave of that court. DeMarco informed this court that he considered that restraining order as being intended to bar him from motions in the bankruptcy court as well. The trustee vehemently opposed the request for an evidentiary hearing in supposed aid of her motion. This court allowed DeMarco time to obtain an order from the district court allowing him to move this court to vacate the disputed order. Whereas DeMarco obtained an order from the district court directing this court to conduct a pre-motion conference with respect to another matter, DeMarco did not obtain the district court's authority to move to vacate the confirmed sale and did not make such a motion. Accordingly, no evidentiary hearing was held, the trustee and Resnick agreeing on the salient facts.

Subsequent to the hearing on Resnick's motion, David A. Gilmartin, Esq., a judgment creditor, purported to join in the trustee's opposition to Resnick's motion.

**2.** See the decision of the Court of Appeals for the Second Circuit in *A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc., (In re Tiana Queen Motel, Inc., Todem Homes, Inc., Anthony DeMarco)* 749 F.2d 146 (2d Cir.1984) from which many of the uncontested facts are drawn.

**3.** Upon Judge Galgay's death the cases were temporarily reassigned to Judge Ryan. Upon Judge Ryan's retirement, the cases were reassigned to this court.

**4.** DeMarco's case was converted, not upon a formal motion by a party in interest, but upon a recognition by all parties, including DeMarco, that conversion of all three cases was being considered and that all three should be similarly treated. *A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc., supra,* 749 F.2d at 150.

*pro se*, filed a notice of appeal to challenge the three conversions. Due to the complexities of the matter, the court appointed *pro bono* counsel for DeMarco. The case was assigned to Judge Carter.

In November 1982, Dorothy Eisenberg was appointed chapter 7 trustee for all three estates. In early February 1983, the trustee gave notice of her intention to auction the Tiana Queen motel site and residential property and the Todem Homes option. The day before the scheduled auction, DeMarco, apparently acting *pro se*, requested Bankruptcy Judge Abram to stay the auction and, upon her refusal to do so, again appealed to the district court. That appeal, too, was assigned to Judge Carter who also refused to stay the auction on condition that the trustee not consummate the sales prior to resolution of the pending appeals from the conversion orders.

The auction was held on February 23, 1983. Robert Mantin made the highest bid for the Tiana 'Queen Lloyd Harbor and house. Mantin also made a $370,000 bid for the Todem Homes Lloyd Harbor option but his bid was predicated upon the trustee's delivery of fee title to him. Gerald Resnick made the highest bid ($135,000) for the option contract to purchase the land.[5] Stanley Weisz made the highest bid for the Tiana Queen motel site.

On May 12, 1983 Judge Galgay held a hearing on the trustee's motion to (i) accept Mantin's bid for the Tiana Queen Lloyd Harbor property; (ii) to accept Resnick's bid for the Todem Homes Lloyd Harbor option and thereby reject Mantin's bid predicated upon fee title; and (iii) to reject Weisz's bid for the Tiana Queen motel site. On June 7, 1983, Judge Galgay entered two orders, one authorizing the trustee to sell the Lloyd Harbor land and house to Mantin and to reject the Weisz offer and the other authorizing the trustee to sell the option contract to Resnick. Both orders were conditioned upon the outcome of the appeals before Judge Carter from the conversion orders; in the event that the conversions were upheld, the trustee was permitted to complete the sales but in the event that the conversions were reversed, the trustee could take no action without further order of the bankruptcy court.

DeMarco, again acting *pro se*, appealed from the Tiana Queen order authorizing the sale to Mantin. He did not appeal from the Todem Homes order authorizing the sale of the option to Resnick and, with the passage of time, that order became final. On September 29, 1983, 34 B.R. 357, Judge Carter affirmed the conversion orders, dismissed as moot the appeal from Judge Abram's order refusing to stay the auctions and affirmed the sale to Mantin.[6] Once again DeMarco appealed.

During the pendency of the appeal to Judge Carter, in late June 1983, DeMarco filed an action *pro se* in the district court under 42 U.S.C. § 1983 naming as defendants Judge Galgay, the trustee, her counsel and real estate advisor, the United States Trustee, two of the secured creditors of Tiana Queen, DeMarco's former attorneys who were also secured creditors of the estates, officials of the Town of Southampton and others. The action alleged, in essence, that the defendants, acting in a conspiracy, had deprived DeMarco of his con-

---

5. The trustee's notice of intention to sell the option contract recited that she had received an offer of $430,000.00 cash for the option conditioned upon delivery of title. Apparently, this offer was withdrawn, for Mantin's offer was substantially less. The notice also recited that the option would be sold conditional upon delivery of title only if no offers were made for the option without that condition.

6. As should be evident from this recitation of the facts, the factual context of the disputes among DeMarco, his creditors and the trustee was complex and confusing. In what appears to have been a clerical error, Judge Carter also affirmed the Todem Homes order which he described as authorizing the sale of the option for $135,000 to Mantin. Of course the $135,000 bid was Resnick's, not Mantin's, and it does not appear that DeMarco even appealed from the order. The court of appeals apparently recognized the error for it did not mention in its decision affirming Judge Carter the Todem Homes order authorizing the sale to Resnick. However, whether DeMarco appealed from that order or not is irrelevant since the order has become final in any event.

stitutional rights by blocking his development of the Tiana Queen motel site and by forcing him and his corporations into bankruptcy and liquidation. The case was assigned to Judge Edelstein, who appointed counsel for DeMarco. Thereafter, DeMarco dropped various defendants so that the only remaining defendants are various officials of the Town of Southampton. On November 29, 1983 (just about two months after Judge Carter filed his order disposing of the appeals before him), Judge Edelstein issued a restraining order mandating "that no action of any kind by any person, entity, or governmental body shall be taken with respect to any property in which plaintiff [DeMarco], or any entity in which plaintiff is a principal has an interest." This order brought to a standstill proceedings in the bankruptcy court and prevented the trustee from consummating her sale of the option to Resnick despite Judge Carter's affirmance two months earlier of the order of conversion.[7]

Resnick lost heart sometime after entry of the restraining order when, it appears, his request of Judge Edelstein for leave to move to vacate the restraining order was denied. By motion dated January 20, 1984 Resnick moved this court for leave to withdraw his offer and for the return of his $13,500 downpayment (which the trustee had by then been holding for some eleven months). As justification for his request, Resnick recited in his application "[t]hat because of protracted litigation, I have not received an assignment of said executory contract and it appears that same will never be consummated." On June 21, 1984, a full six months later, Judge Ryan, stating that "[w]e are paralyzed in this case" because of the restraining order, denied Resnick's request and suggested that the trustee take some appropriate action to get relief from that order.

The secured creditors of Tiana Queen heeded this advice and, joined by the trustee, petitioned the circuit court to issue a writ of mandamus directing Judge Edel-

stein to vacate his stay order. The circuit court, noting that DeMarco had failed to offer any persuasive reason why monetary damages would not adequately compensate him if he were victorious with his § 1983 action, remanded the petition to the district court. 749 F.2d 146 at 153 (2nd Cir.1984). Two weeks after the decision was handed down, Resnick's counsel sent a letter to the trustee advising that Resnick remained ready, willing and anxious to conclude the sale and demanding that it be concluded immediately following lifting of the district court's order. By order entered January 7, 1985, Judge Edelstein vacated the restraining order. Despite the vacatur of the order in January, the trustee declined to consummate the sale, prompting Resnick to move this court for an order directing the trustee to transfer to him her right, title and interest in the option contract. The trustee, asserting that there was nothing improper in the entry of the order which she procured confirming the sale and conceding that that order has been final for over two years, argues that no rights vested in Resnick so that this court is free in the exercise of its equitable powers to vacate the order and authorize the trustee to accept a higher and better offer. The court concludes that rights did indeed vest in Resnick and that it would be an abuse of the court's discretion to vacate the order confirming the sale.

## DISCUSSION

 At the outset the trustee correctly argues that a bankruptcy court, sitting as a court of equity, *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) has the power to set aside its own orders. *Taylor v. Lake (In re CADA Investments)*, 664 F.2d 1158, 1161 (9th Cir.1981). The court is duty bound to examine the facts before it with equitable principles in mind, *M & M Transportation Company v. Schuster Express, Inc. (In re M & M Transportation Company)*, 13 B.R. 861, 867 (Bankr.S.D.N.Y.1981).

---

7. The record does not reveal why the trustee did not consummate the sale to Resnick during the two-month interval between affirmance of the orders of conversion and issuance of the re-

straining order. Since the order confirming the sale to Resnick was not appealed, it would appear that the trustee was not prevented from concluding the transaction during that interval.

This equitable power was first expressed by the Supreme Court in *Wayne United Gas Co. v. Owens—Illinois Gas Co.*, 300 U.S. 131, 137, 57 S.Ct. 382, 385, 81 L.Ed. 557 (1937): "[w]e think the court has the power, for good reason, to revise its judgments upon seasonable application and before rights have vested on the faith of its action." This power is now expressly vested in the bankruptcy courts by virtue of Bankruptcy Rule 9024 which makes Federal Rule of Civil Procedure 60 applicable to bankruptcy cases. Pursuant to Rule 60(b)(6), on which the trustee relies, the court may relieve a party from a final order for any reason which would justify relief but is not specified in subsections (1)–(5) of that rule.

■ As the quoted language from *Wayne United Gas* makes clear, the power to set aside an order was limited to cases in which rights had not vested on the faith of the order. *Taylor v. Lake, supra* 664 F.2d at 1161. As a result of this limitation on the court's equitable powers, it is the general policy of the bankruptcy courts to uphold regularly conducted sales so as to engender and maintain their stability and the integrity of the process. *M & M Transportation, supra*, 13 B.R. at 867. Particularly is this important once a sale has been confirmed.

> The standard for setting aside a sale is stricter than that applied in a direct attack upon a confirmation. In the latter, the governing principle is to obtain the best price for the bankruptcy estate whereas in the former there is greater emphasis upon finality in judicial sales and executed contracts unless they are "tinged with fraud, error or similar defects which would in equity affect the validity of any private transactions." 4A Collier Bankruptcy, ¶ 70.98[16], 1183, 1184–94 (14th ed. 1967); *In re Burr Mfg. & Supply Co.*, 217 F. 16, 19 (2 Cir.1914).

*In re General Insecticide Co., Inc.*, 403 F.2d 629, 630–31 (2d Cir.1968). *See In re Webcor, Inc.*, 392 F.2d 893, 899 (7th Cir. 1968) *cert. denied*, 393 U.S. 837, 89 S.Ct. 113, 21 L.Ed.2d 107 (1968); *see also Jackson v. Pacific Energy Resources (In re Transcontinental Energy Corp.*, 683 F.2d 326, 328 (9th Cir.1982).

■ Here, the trustee's challenge is mounted not upon fraud, error or similar defects, but upon her expressed desire to obtain more money for the estate enabling her to pay a greater dividend to creditors. But inadequacy of price, standing alone, is an insufficient ground for setting aside a sale, unless the inadequacy is so great in itself to raise a presumption of fraud or to shock the conscience of the court. *In re Burr Mfg. & Supply Co.*, 217 F. 16, 21 (2d Cir.1914); *See In re Chung King, Inc.*, 753 F.2d 547, 550 (7th Cir.1985); *In re Jewett & Sowers Oil Co.*, 86 F.2d 497, 498 (7th Cir. 1936). Adequacy of the price is determined not at the time that the attack on confirmation is made but as of the time of the sale. *Smith v. Juhan (In re Smith)*, 311 F.2d 670, 673 (10th Cir.1962); *In re Marathon Foundry & Machine Company*, 239 F.2d 122, 127 (7th Cir.1956), *cert. denied sub nom. Dyner v. Schwartz*, 353 U.S. 912, 77 S.Ct. 669, 1 L.Ed.2d 665 (1957).

■ Nowhere does the trustee claim that Resnick's offer was inadequate when made, let alone shocking to the conscience of the court.[8] Rather, the trustee urges

---

8. DeMarco, in a submission made to the court in lieu of the motion which this court granted him leave to make, asserts, without more, that "the original offer by Resnick was absolutely inadequate." Inasmuch as DeMarco knew at the time of the auction of the bid by Resnick and the asserted inadequacy thereof but did not appeal from the order confirming the sale, his objection cannot serve as the impetus for vacating the order. Moreover, since Mantin's bid for fee title at a price of $370,000 does not even come close to approaching the present market value which DeMarco claims the property enjoys, the court is further persuaded that Res-nick's bid, although certainly not rich, was not so grossly inadequate as to be shocking to the conscience of the court.

The balance of the contentions in DeMarco's submission, namely, that the trustee made unspecified misrepresentations to the court and misled the court into confirming the sale for $135,000, could have been raised in an appeal from the order of confirmation, but were not. Further, DeMarco made no motion to vacate the order of confirmation and his contentions are at odds with the trustee's position, in which he joins.

this court to allow the estate and DeMarco to receive the benefit of higher offers. As stated in *Morrison v. Burnette*, 154 F. 617, 624 (8th Cir.1907), quoted with approval by this Circuit in *Burr*, this desire cannot justify setting aside a confirmed sale:

> The rule is settled, and it seems to be universally approved, that after confirmation of a judicial sale neither inadequacy of price, *nor offers of better prices*, nor anything but fraud, accident, mistake, or some other cause for which equity would avoid a like sale between private parties, will warrant a court in avoiding the confirmation of a sale or *in opening the latter and receiving subsequent bids*. (Emphasis added.)

In order, presumably, to overcome the substantial body of law which protects a regularly conducted auction sale, the trustee argues that Resnick acquired no vested rights and that the order may therefore be vacated under the doctrine of *Wayne United Gas*. But the cases belie her argument.

In *Burr, supra,* this Circuit, determining that a bidder at a confirmed sale acquires vested rights in and equitable title to the auctioned property, explained:

> The confirmation of the sale did not pass the legal title to [the highest bidder], but it had the effect of vesting in him the full equitable title to the property. Before confirmation a sale is not a technical and legal sense a sale. Until confirmation an accepted bidder is merely a preferred proposer. But a confirmation has the effect of completing the sale, and while it does not pass the legal title, it vests the full equitable title to the property in the purchaser, even though the deed executed in pursuance thereof is irregular, and even if no deed whatever is made.

217 F. at 19. Further, the court explained that after a sale has been confirmed, "the court and the successful bidder are regarded as occupying the relation of vendor and purchaser in an executed sale...." *Id.* at 21.

The conclusions in *Burr* that the highest bidder obtains a vested interest in and equitable title to the auctioned property are in no way aberrant. *See Smith v. Juhan,* *supra*, 311 F.2d at 672–73; *J.J. Sugarman Co. v. Davis*, 203 F.2d 931, 933 (10th Cir.1953); *Tavormina v. FIR, Inc. (In re Alchar Hardware Co.)*, 33 B.R. 230, 232 (Bankr.S.D.Fla.1983) (an offer subject to approval by the court coupled with the trustee's application for leave to accept the offer and the court's confirmation of the sale bound the trustee and constituted acceptance of the offer such that the trustee was authorized to retain the deposit upon the buyer's default).

The trustee's reliance upon *Feldman v. Trans-East Air, Inc.*, 497 F.2d 352 (2d Cir. 1974) is misplaced. There the bankruptcy referee had refused the trustee's request to vacate an order obtained by the debtor in possession 16 months earlier disaffirming certain executory contracts. The trustee's request was predicated upon his discovery that the disaffirmed contracts had suddenly become valuable. The appellate court, finding that the parties had the right to and had acted in reliance upon the disaffirmance, affirmed the referee and held that the doctrines of equitable and collateral estoppel precluded the relief requested by the trustee. This court reads *Feldman* not as helpful to the trustee but as supportive of Resnick's position to the extent that the circuit court refused to tamper with an order upon which the parties had a right to rely—despite the trustee's argument that more money could be realized for the estate if the order were vacated.

The offers obtained by the trustee and DeMarco cannot be classified as bids competitive with Resnick's. At best, they are belated offers to purchase fee title (requiring the trustee first to obtain that title) made at a time when full equitable title to an option to purchase the property had already passed, given confirmation of the sale. Absent an allegation and showing that the price offered by Resnick was at the time that the offer was made so grossly inadequate as to be shocking to the conscience of the court, it would be an abuse of discretion for this court to vacate the final order confirming the sale. This is not a case such as *CADA Investments, supra,* 664 F.2d 1158, where the trustee

had, through an innocent breakdown in communications, failed to receive the highest bid on a private sale and where the motion to set aside the order confirming the sale had been made within the time available for direct review. Here, the trustee received all bids, accepted the Resnick bid despite a possibly higher bid for fee title and not only did nothing for two and a half years to challenge the outcome of the auction but opposed Resnick's motion to be released from his contract. To allow the mere passage of time which has presumably rendered the option and the underlying property more valuable to justify vacating the order of confirmation would be to encourage litigation respecting judicial auctions in the hope that even if the sale were otherwise unassailable, the passage of time would allow for a new auction. As stated in *Webcor, supra,* 392 F.2d at 899 "a time must come when a fair bid is accepted and the proceedings are ended."

Resnick's motion to compel the trustee to transfer her interest to him is granted.