**In re TIANA QUEEN MOTEL, INC., Todem Homes, Inc., Anthony DeMarco, Debtors-Appellants.**

**A. ILLUM HANSEN, INC., Plaintiff-Respondent,**

v.

**TIANA QUEEN MOTEL, INC., et al.**

**No. 83 Civ. 0036(RLC).**

United States District Court, S.D. New York.

Sept. 29, 1983.

---

Donovan Leisure Newton & Irvine, New York City, for debtors-appellants; Allan R. Freedman, New York City, of counsel.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for trustee; Karen Carter, Garden City, N.Y., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The case involves Anthony DeMarco, his two corporations, and their three properties, two of which were swamped with litigation. Over a decade ago, DeMarco, the sole owner of two New York corporations, Tiana Queen Motel, Inc. ("Tiana") and Todem Homes, Inc. ("Todem"), began building a 108-room motel in the Village of Hampton Bays in the Town of South Hampton. With approximately 40 percent of the construction completed and with several hundred thousand dollars already expended, DeMarco was forced to suspend construction when the Town of South Hampton, asserting that DeMarco was not acting within the scope of his building permit, moved to prohibit him from building a pool, a restaurant, and other recreational facilities as part of the motel. Years of litigation ensued and Tiana, the DeMarco corporation building the motel, finally triumphed in asserting that the permit allowed for these facilities. This victory was pyrrhic, however, for it came after such extraordinary delays and legal expenses that DeMarco was unable to continue with construction or his mortgage payments.

DeMarco also owned an option to purchase 17 acres of prime waterfront property in Lloyd Harbor for $40,000; the acreage was worth many times that. The person owning the land resisted DeMarco's efforts to exercise the option and entangled him

and Todem, the company seeking to exercise the option, in a decade of litigation. In March, 1982, after DeMarco had filed for bankruptcy, the New York State Court of Appeals affirmed a lower court decision upholding DeMarco's right to purchase the valuable tract.

The third property belonging to DeMarco is his waterfront home in Lloyd Harbor. To construct its Hampton Bays motel, Tiana procured four mortgages, and DeMarco, desperate to maintain liquidity, allowed his to be subject to one of the Tiana mortgages.

In early 1981, Tiana's secured creditors sought to foreclose on the motel property after DeMarco had failed to make any mortgage payments in over three years on the $350,000 principal or the more than $150,000 in accrued interest. Overwhelmed by the inexorable costs of litigation and mortgage expenses, DeMarco, Tiana and Todem ("the debtors") filed voluntary Chapter 11 petitions in the Bankruptcy Court of the Southern District of New York on July 17, 1981. In March, 1982, DeMarco, Tiana and Todem filed reorganization plans, which provided for 100 percent payment of all creditors.

In February, 1982, the Official Creditors Committee of Tiana moved to convert that case to Chapter 7, and in March, 1982, the Creditors Committee made a similar motion in the Todem case. Bankruptcy Judge Galgay held hearings to consider the motions to convert on five different occasions—May 4, August 23, August 31, October 6, and October 26, 1982. On October 26, 1982, Judge Galgay ordered conversions in not only the Tiana and Todem cases, but also in DeMarco's personal bankruptcy case.

On November 5, 1982, DeMarco, acting pro se, filed a notice of appeal to challenge the three conversions. Due to the complexities of the matter, the court appointed *pro bono* counsel for DeMarco.

DeMarco now argues, through his counsel, that the three conversions should be overturned on the ground that they were made without a full hearing, were not accompanied by conclusions of law, and were not supported by sufficient evidence in the

record. In addition, DeMarco asserts that no party moved to convert his personal bankruptcy case to Chapter 7 and that the bankruptcy judge abused his discretion in ordering the conversion of that case. The United States trustee has moved to dismiss this appeal.

On February 22, 1983, the debtors brought an order to show cause in the bankruptcy court to stay an auction of the debtors' properties that this court had ordered could go forward. After Bankruptcy Judge Prudence Abrams rejected the debtors' plea to stay the auction, DeMarco appealed to this court on February 23, 1983, to stay the sale, but the auction proceeded as scheduled on February 23, 1983. The United States trustee has also moved to dismiss this appeal.

In another motion, the debtors seek to strike from the record before this court two affidavits that the creditors submitted five months after Judge Galgay ordered the conversions. The debtors also move to strike the transcript of a hearing ordered by this court to furnish this court with some background on the debtors' history. That hearing was held on January 21, 1983, almost three months after the conversions were ordered.

Lastly, the United States trustee moves this court to accept offers made at the auction to purchase DeMarco's house and to purchase the option to buy the 17 waterfront acres. The trustee also asks the court to reject as inadequate an offer that was made to purchase the motel property.

*Determination*

Under Section 1112(b) of the Bankruptcy Code, 11 U.S.C. § 1112(b), the court may convert a case only "after notice and a hearing." · The debtors argue that Judge Galgay's conversion orders should be overturned on the ground that a full hearing was denied them.

 This argument is clearly defective inasmuch as the bankruptcy judge held five hearings on the conversion motions—on May 4, August 23, August 31, October 6, and October 26, 1982. In addition, Judge

Galgay held a hearing on the debtors' disclosure statements on October 6, 1982. What is more, both DeMarco's counsel and DeMarco himself had more than ample opportunity to speak about the debtors' hopes of carrying out their proposed reorganization plans. If the hearings that Judge Galgay provided the debtors here were not full, it would be hard to imagine the lengths to which a judge would have to go to provide a "full" hearing.

Section 1112(b) of the Bankruptcy Code, 11 U.S.C. § 1112(b), also states that "the court may convert a case under [Chapter 11] to Chapter 7 . . . for cause." The subsection then lists nine possible causes for conversion, including

> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors . . . .

Although DeMarco's counsel makes a persuasive argument that the bankruptcy judge could have been more lucid in articulating his conclusions of law, it nevertheless is true that a cursory reading of the transcript of the hearings demonstrates that Judge Galgay granted the conversion motions principally because of his concern that the value of the estate was being diminished and the proposed reorganization plans appeared to have little chance of succeeding.

At the October 6 hearing, Judge Galgay, speaking of the debtors' attempts to sell off one of their properties in order to accumulate cash to further their reorganization plans, stated, "I really don't see very much prospects for it." Tr. of Oct. 6 Hearing at 17. Nevertheless, at that hearing, Judge Galgay—having already granted the debtors more than 140 days to sell off one of their properties to help them carry out their proposed plans—patiently allowed them another 20 days with the possibility of even more time.

■ At the October 26 hearing, DeMarco, despite repeated assertions during the pre-

vious five months by him and his counsel that he was on the verge of selling one of his properties, acknowledged that he had still not contracted to sell any of his properties. After again listening to appeals from debtors' counsel for more time to sell off a property, Judge Galgay stated that "the prospects of [the debtors'] liquidating [a property] are remote." Tr. of Oct. 26 Hearing at 5. Although not explicitly stating it as such, Judge Galgay was making a conclusion of law regarding the "absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(1).

What is more, Judge Galgay often expressed concern about the debtors' failure over a period of 14 months to make any progress in effectuating their proposed reorganization plans. 11 U.S.C. § 1112(b)(2). *See, e.g.,* Tr. of Aug. 31 Hearing at 49. Similarly, the transcripts demonstrate Judge Galgay's concern about "unreasonable delay by the debtor[s] that is prejudicial to creditors." 11 U.S.C. § 1112(c). *See, e.g.,* Tr. of Aug. 31 Hearing at 34–35. ("[Y]ou just can't [say to] a secured creditor 'I want to hold you off until there will be a sale a year from now or two years from now' ").

All this makes clear that Judge Galgay had concluded that there was ample cause for conversion under the first three subsections of 11 U.S.C. § 1112(b).

■ That there was sufficient evidence in the record to buttress Judge Galgay's conclusions of law need not delay us long. The record shows that the motel property was deteriorating, Tr. of May 4 Hearing at 6, that there were fire violations at that site, Tr. of March 10 Hearing at 4, and that no payments on the four mortgages on the motel had been made since 1977. Tr. of May 4 Hearing at 6. In addition, there was testimony that sizable back taxes were accruing on the properties, *id.* at 7, that Tiana and DeMarco had not been conducting business or had any employees for four-and-a-half years, *id.* at 4; Tr. of Aug. 23 Hearing at 9; Tr. of Oct. 6 Hearing at 13, and that the long wait to resume construction of the motel could well mean that the permit to

construct it had expired. Tr. of Aug. 23 Hearing at 16, 20. There was also testimony that the 17 valuable acres on which Todem and DeMarco had an option could require a great deal of money, perhaps hundreds of thousands of dollars, to subdivide and develop so that the tract could be sold at an optimal profit. *Id.* at 9.

All this evidence makes the court reach the same conclusion that the bankruptcy judge reached—the reorganization plans have little chance of succeeding and the three cases filed under Chapter 11 warrant conversion to Chapter 7.

In reaching this conclusion, the court has taken into account DeMarco's claims that he will have more than ample money to effectuate all three reorganization plans should he win the hundreds of thousands of dollars that he is seeking in his counterclaim against the Town of South Hampton, in his claim against past lawyers for malpractice, and in his claim against the landowner who for years resisted his efforts to exercise his option to purchase the 17 waterfront acres. DeMarco appears to seek vindication of these claims in this court, but the place for him to seek such vindication is not in this case, but in other actions.

DeMarco's prospects in such litigation are unclear at best, but what is clear is that these lawsuits will likely take years, and his creditors have already waited a long time for payment. In asking the court to reverse the bankruptcy judge's conversion orders, DeMarco is in effect asking the court to have the creditors wait even more years, perhaps indefinitely, for payment. Although the court is sympathetic to DeMarco's plight, the court must consider the rights of the creditors, and the creditors cannot, as DeMarco wishes, be put off indefinitely.

■ DeMarco's next argument is a procedural one. He notes that under 11 U.S.C. § 1112(b), a case may be converted to Chapter 7 only "on request of a party in interest." DeMarco maintains that Judge Galgay abused his discretion in ordering the conversion of DeMarco's personal bankruptcy case on the ground that no party in interest had requested a conversion of his case.

This argument, too, must fail because DeMarco's counsel specifically requested at the August 31 hearing that the course of personal bankruptcy case parallel that of the Tiana and Todem cases. Tr. of Aug. 31 Hearing at 53. This could only have meant that DeMarco's personal bankruptcy case was also to be considered for conversion.

For all these reasons, the trustee's motion to dismiss the debtor's bankruptcy appeal filed on November 5, 1981 is granted.

The next motion to be considered was brought by the United States trustee to dismiss the appeal that the debtors brought on February 23, 1983. That appeal asks the court to overturn Judge Abram's refusal to stay the February 23, 1983 auction of the debtors' properties. On the morning of the auction, this court signed an order allowing the auction to proceed, and at the auction offers were made for all three of debtors' properties.

■ The trustee's motion to dismiss the February 23, 1983 appeal is granted, because DeMarco's efforts to overturn Judge Abram's refusal to grant a stay of the auction on the ground that the conversions were defective have been mooted by the holding of the auction, and, as explained *supra,* Judge Galgay acted properly in ordering the conversions.

■ Counsel for DeMarco argue successfully, however, that the transcript of a January 21, 1983 hearing before Judge Galgay, the March 16, 1983 affidavit of counsel for the secured creditors, and the March 23, 1983 affidavit of an assistant United States trustee should be stricken from the record. DeMarco's counsel is, of course, correct in arguing that this court, sitting as an appellate court in this case, should not receive into evidence material that was not before the bankruptcy court. *In the Matter of Colorado Corporation, Bankrupt,* 531 F.2d 463, 467 (10th Cir.1976); *see also Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 998 n. 35 (2d Cir.1975), *cert. denied,* 423 U.S. 1018,

**362**

96 S.Ct. 453, 46 L.Ed.2d 389 (1975). DeMarco's motion to strike is, therefore, granted. This hardly helps DeMarco's cause, however, because, as stated above, the record existing before Judge Galgay ordered the conversions contains sufficient evidence to uphold those orders.

Lastly, the trustee has moved for court approval of the sale of DeMarco's Lloyd Harbor home to Robert Mantin for $254,000 and to approve the trustee's acceptance of Mantin's $135,000 offer to purchase DeMarco's option to buy the 17 waterfront acres. The trustee also asks the court to allow her to reject the offer that Stanley Weisz made at the auction to purchase the motel property for $280,000—less than 65 percent of the appraised value of the property. The court hereby authorizes the trustee to accept Mantin's offers to purchase DeMarco's home and his option for the 17 acres. The trustee is also authorized to reject the Weisz offer for the motel property and re-auction that property.

IT IS SO ORDERED.