In the Matter of Estle Anthony COOK, and Loretta Ellen Cook, Debtors.

CENTRAL PRODUCTION CREDIT ASSOCIATION, Movant,

v.

Estle Anthony COOK, and Loretta Ellen Cook, Respondents.

Bankruptcy No. 86–00554–3–11.

United States Bankruptcy Court, W.D. Missouri, W.D.

Dec. 24, 1986.

Robert A. Pummill, Barker, Rubin & Sonnich, Kansas City, Mo., for movant.

Joel Pelofsky, Shughart, Thomson, Kilroy, P.C., Kansas City, Mo., for respondents.

## NUNC PRO TUNC ORDER DENYING THE MOTION OF THE DEBTORS TO SET ASIDE THE COURT'S FORMER ORDER OF DISMISSAL

DENNIS J. STEWART, Chief Judge.

I

This court formerly, on October 7, 1986, issued its order dismissing the within chapter 11 proceedings. At that time, the proceedings had pended before the court for some 8 months since February 5, 1986, without the presentation of a confirmable plan to the court. The tangled procedural history of the case at that time included a halting and unenthusiastic attempt by erstwhile counsel for the debtors to achieve confirmation of a plan of reorganization. But this attempt failed for failure to attain the positive vote of at lease one actual assenting class. The order of the court denying confirmation of this proposed plan was issued on June 12, 1986, after the case had pended before this court for some 4 months and had been punctuated by sever-

al notable defaults in the performance of former counsel for the debtors. Erstwhile counsel was so convinced that any plan of reorganization was unconfirmable that he proposed then to file a plan of liquidation. The creditor Production Credit Association withheld moving to dismiss for a time on the basis of the promise to file a plan of liquidation.

On June 9, 1986, the current counsel for debtors entered his appearance. This entry of appearance occurred in time for him to assist the debtors in defending the motion of the Production Credit Association to dismiss the within bankruptcy proceedings. After a hearing held on August 29, 1986, in which the movant creditor demonstrated with some fair conclusiveness that it had been significantly prejudiced in its collateral position by reason of the delay, the court nevertheless, principally for the purpose of granting new counsel an opportunity to develop a confirmable plan, denied the motion to dismiss on condition that an amended disclosure statement, a confirmable plan, and an indication from an impaired class of creditors that they would accept the plan were all filed with the court within fourteen days. The fourteen days, however, passed without the filing of any amended disclosure statement or any indication of intention by any class of creditors to accept the debtors' plan of reorganization. A second plan of reorganization was filed which, in nearly all material respects, was identical to that which had previously been denied confirmation by the court. But, by virtue of an added provision, the creditor John Deere Company, being owed a sum only slightly in excess of $2,000, was to be paid immediately after confirmation of the plan.[1] New counsel for the debtor wrote a letter to the court stating that this new provision had induced John Deere Company to indicate acceptance of the plan. But counsel did not, as the court had directed as the condition of nondismissal, present any written statement of intention

of the creditor itself. And no amended disclosure statement was filed at all.

Therefore, the court, when the conditions were not satisfied, dismissed the proceedings. Counsel for the debtors, although he had undoubtedly failed to satisfy the conditions imposed by the court, apparently believed that it was a denial of due process in some form for the court to dismiss the case upon failure of the conditions without holding another hearing. But the hearing had already been held on August 29, 1986, as a result of which the court denied dismissal, but only on the conditions specified, which were undeniably justified by the evidence. At the conclusion of the hearing then held, the court explicitly advised counsel for the debtors that the conditions for nondismissal must be exactingly complied with, and counsel stated clearly and publicly, "I understand." Still, despite the fact that the record plainly demonstrated that the conditions had not timely been met, counsel complained of a denial of due process in a motion filed to set aside the dismissal.

■ Therefore, to ensure, beyond any doubt, the maximum of process to debtors, the court, on ample prior notice, convened its hearing on December 3, 1986, on the debtors' motion to set aside the order of dismissal. In that hearing, the debtors did not succeed in showing that an amended disclosure statement had been timely filed nor that the written statement of a class of creditors as to its intention to accept the plan had been timely filed. But, most crucially, the debtors failed to show that their proposed plan was confirmable. This was so, not only because of the unconscionable priority of payment offered to the minor creditor John Deere Company in order to induce its acceptance of the plan, but also because the testimony of the debtor Estle Cook in the hearing of December 3, 1986, clearly showed that the plan did not and could not meet the "best interests of creditors" test.[2] The amount proposed to be

---

1. The former plan proposed to pay the debt within the first year after confirmation; the new one proposes full payment within 30 days after confirmation.

2. Now embodied in the requirement of § 1129(a)(7) that the creditors figure to receive at least as much under the plan as they would have received in straight liquidation.

paid to unsecured creditors over the life of the plan is the principal sum of $40,000, when the herd of hogs in which Wayne Feed a Division of Continental Grain Company claims a security interest alone has a value of $50,000 in excess of the balance due to Wayne Feed a Division of Continental Grain Company and Mr. Cook also testified to the existence of equity to an unstated extent.[3] But most clearly, the plan which has been proposed is clearly shown by the evidence in the hearing of December 3, 1986, to be infeasible. For, as material, it proposes an initial annual payment to creditors of some $167,000 within 90 days of confirmation of the plan. But the testimony of Mr. Cook in the hearing of December 3, 1986, shows that, as of the current time, when the harvest of the majority of the crops which were intended to produce that $167,000 has been completed, the most optimistic view of the potential value falls nearly $30,000 short of that figure.[4] Further, the evidence clearly shows that another $12,000 is now owed the Production Credit Association in unmet adequate protection obligations. There is no statement or showing that more can be expected within the next 180 days. In order to derive that value, the debtors admit that they would have to sell the livestock which is the security of the Production Credit Association to the extent that that creditor could not be paid out of the property to be

liquidated in the 11th year of the plan for the purpose of paying the debts that then remain unpaid.[5] Under these circumstances, the showing of infeasibility is so clear that, even without the procedural defaults of debtors' counsel and the consequent unreasonable delay which has resulted, the court has no alternative except to grant the motion to dismiss. The continued processing of these chapter 11 proceedings can only prolong the debtors' agony, result in prejudice to creditors, and create more costs, fees and expenses of litigation to the disadvantage of the debtors as well as creditors.

## II

After the foregoing was composed, but before it could be typed and filed, counsel for the debtor, on December 4, 1986, filed a "memorandum brief of issue of confirmation." Such a brief was not invited by the court at the conclusion of the hearing of December 3, 1986, nor was it, under the circumstances, permissible. The court first heard evidence on December 3, 1986, then permitted oral argument, then took the issue under advisement, stating that, because it was necessary for the court to sit in Joplin on December 4, 1986, and December 5, 1986, its written ruling could be filed no sooner than Monday, December 8, 1986. The unexpected filing of the post-trial brief has necessitated further delay in

3. Thus, based on Mr. Cook's imprecise testimony in the hearing of December 3, 1986, the court cannot with any certainty find that his equity in property is limited to the $40,000 which he proposes to pay to unsecured creditors.

4. In the uninvited and prohibited brief filed by counsel for the debtors subsequent to the hearing of December 3, 1986, he claims that almost $141,690 should be available to pay debts within 90 days of confirmation, comprised of the following components:

| | |
|---|---|
| Beans (harvested) | $ 27,000.00 |
| Corn | 15,040.00 |
| Alfalfa | 22,400.00 |
| Cattle | 30,000.00 |
| Beans (harvested) | 47,250.00 |
| | $141,690.00 |

As is elsewhere observed, Mr. Cook testified in the hearing of December 3, 1986, the alfalfa

would not be used to defray indebtedness, but rather as feed for livestock. Further, the cattle which is proposed to be sold for $30,000 is admittedly all subject to the security interest of the Production Credit Association. Under such circumstances, principles of adequate protection would not permit the cattle to be sold for the benefit of other creditors absent the granting of a replacement lien in other available unsecured property which is not shown to exist to the extent that Production Credit Association can be considered adequately protected for the sale of $30,000 of its collateral over 10 years time—a total expenditure of $300,000 in value. Indeed, the debtors *contend* that there is only $40,000 in unsecured property which is currently available. See note 3, *supra.* But, even granting counsel's contention in this regard, the income is shown to be insufficient to sustain the plan.

5. See note 4, *supra*

the making of this ruling, not to mention the confusion which is pointed out below. In view of the filing of the brief, the court had to withhold filing of the above ruling until it could grant the other affected parties an opportunity to respond to the newly-raised contentions of the debtors. The other parties requested through December 8, 1986, to determine their position. In the afternoon of December 8, 1986, they advised the court that they would forego the opportunity to file responsive briefs. This waiver necessitated that the court spend yet more time in reviewing the files and records in the case to verify the newly-raised factual contentions of the debtors.

In this regard, it must be noted that, in the brief of December 4, 1986, counsel for the debtors scales the yearly plan payment downward from $167,000.00 per year to $118,057.00. Under applicable evidentiary rules and rules relating to the concept of fairness, this court would be fully justified in deeming counsel's formal judicial admissions in the hearing as binding and unchangeable. As this court has had prior occasion to state respecting another fatal admission made by counsel in a former action,

> " 'If an attorney is employed to manage a party's conduct of a lawsuit he has *prima facie* authority to make relevant judicial admissions by pleadings, by oral or written stipulations, or by formal opening statement, which unless allowed to be withdrawn are conclusive.' McCormick's Handbook of the Law of Evidence section 267, p. 643 (1972)."

*Matter of Brewer*, 65 B.R. 75, 83, n. 1 (Bkrtcy.W.D.Mo.1986). The rule makes particular good sense in a case such as that at bar, in which, particularly at the disclosure stage of the proceedings, the court and creditors are solely reliant upon the debtors and their counsel to disclose precisely what the indebtednesses are. And the governing local rule imposed upon the debtors the inescapable duty of disclosing the projected annual payment under the plan. Thus, either the $167,000.00 figure

was correct or else the debtors and their counsel failed to comply with the court's order timely to supply a sufficient amended disclosure statement.

Even, however, if the court is compelled to accept the newly-asserted figure of $118,057.00 as the annual payment, it still cannot find that the proposed plan is feasible and therefore potentially confirmable. Counsel for the debtors contends that evidence in the hearing of December 3, 1986, shows that the debtors are able to meet an annual payment of $118,057.00 because of evidence of the following value in the following crops or their proceeds.

| | |
|---|---|
| Beans (harvested) | $ 27,000.00 |
| Corn | 15,040.00 |
| Alfalfa | 22,400.00 |
| Cattle | 30,000.00 |
| Beans (unharvested) | 47,250.00 |
| TOTAL | $141,690.00 |

At least $52,400 of this total, however, cannot correctly be counted, in view of the precise nature of the testimony of Mr. Cook in the hearing of December 3, 1986. For Mr. Cook stated that the alfalfa ($22,500 in value) would not be marketed, but rather used for feed for cattle, and further, that another $30,000 would have to be obtained from the sale of cattle which are fully mortgaged to the Production Credit Association, and such sales would be impermissible under principles of adequate protection in the absence of adequate replacement collateral which is not shown to exist.[6] Thus, no construction of the evidence, even in the light most favorable to debtors, can warrant a finding that the plan is confirmable.

### III

It must further be observed in the most forceful manner possible that counsel's new contention that annual payments under the plan will be limited to $118,057.00 is not only at odds with his prior statements in the hearing of December 3, 1986, and with his client's testimony in that same hearing, but it also is contradicted by the contents of the plan itself, of which the

6. See note 4, *supra*.

debtors and their counsel now strenuously seek confirmation. According to the court's review of that plan, it calls for payments of at least some $151,000 per year to creditors as follows:

| | |
|---|---|
| Federal Land Bank | $23,160 |
| Prudential Life | 8,500 |
| Boatmen's Bank | 35,892 |
| Boatmen's Bank | 11,580 |
| Bates County National Bank | 2,230 |
| Commodity Credit Corp. | 4,400 |
| John Deere Company | 2,000 |
| Production Credit Association | 49,788 |
| Continental Grain Company | 10,000 |
| Undersecured creditors | 5,000 |
| Unsecured creditors | 4,000 |
| TOTAL | $151,550 |

Further, as observed above, adequate protection payments of $12,000.00 owed to Production Credit Association must be added to this total. The result is that, no matter which of the debtors' self-contradictory statements are credited, there is no way that they are able to give the court any basis for finding that their plan could be confirmable if they were permitted to continue with these chapter 11 proceedings.

### IV

These considerations all converge upon the postscript which the court would rather have not discussed at all. But perhaps the most compelling consideration which compels the court to deny the motion to set aside the dismissal is that the successive shifting of factual contentions by the debtors and their counsel leave the court with little faith in their contentions that their plan can succeed. It seems that they themselves do not know what their plan requires or how much they can produce to meet the outstanding claims of creditors. And their counsel has sought to take undue advantage of the court in filing the uninvited and inappropriate posthearing brief on December 4, 1986. Such an act would have been improper even if it did not seek to change nearly all the material facts which had been evidenced in the hearing of December 3, 1986, for the court then gave an opportunity for final arguments and took the case under advisement without requesting any briefs and under circumstances in which it proposed to issue its ruling momentarily. The court does not and cannot know the circumstances of counsel's checking out the original tape of the August 29, 1986, hearing before the court itself could command its use, and so nothing will be said of that particular incident. Neither does this court regard as more than of minor significance the complaints of clerical personnel that counsel, in attempting to discover in September 1986 whether this court had dismissed this case, freely disregarded the physical boundaries beyond which counsel are not permitted in the clerk's office and was demanding and importunate, to say the least, in so doing. It is true that, a year or so ago, such casual transgressions would have been considered major and cardinal. Fortunately, however, the current administration of the bankruptcy court has placed such events in the inconsequential category which they merit. But it is a matter of serious concern that counsel practicing before a court be direct and honest with that court in accurately stating their factual contentions without shifting them in the unconscionable manner in which they have been shifted in the case at bar. Nowhere is this more important than in the area of disclosing the correct terms of a plan—an area in which the court is so reliant on the good faith of the debtors and their counsel that Local Rule 14(B) requires them to state clearly "[t]he total and precise amount to be paid to each creditor" and "[t]he intervals at which each creditor will be paid and the precise amount of payments to be made at each interval." The rule has scarcely been heeded in this case. The case must therefore remain dismissed. It is beyond the power of judges who have taken an oath to administer justice equally to grant exceptional treatment to counsel for debtors because of his former status as a judge of this court.

Accordingly, it is hereby

ORDERED that debtors' motion to set aside the order of dismissal be, and it is hereby, denied.