**In re Estle Anthony COOK and Loretta Allen Cook, Debtors.**

**Bankruptcy Nos. 86–00554–3–11, 87–0126–CV–W–5.**

United States District Court, W.D. Missouri, W.D.

May 5, 1987.

---

Robert A. Pummill, Kansas City, Mo., for Central Production Credit.

James Daniels, Kansas City, Mo., for Federal Land Bank.

Joel Pelofsky, Shughart, Thomson & Kilroy, Kansas City, Mo., for debtors-appellants.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

This Chapter 11 reorganization proceeding was filed by debtors Estle and Loretta Cook on February 5, 1986, in the United States Bankruptcy Court for the Western District of Missouri. On December 15, 1986, following a series of motions and hearings, the Bankruptcy Court dismissed this proceeding based on the debtors' alleged failure to comply with an order issued by the Bankruptcy Court on August 29, 1986. The Bankruptcy Court also found that the amended plan of reorganization filed by debtors was not confirmable. Debtors now appeal the dismissal to this Court. For the reasons set forth below, this Court affirms the decision of the Bankruptcy Court.

### Factual Background

Debtors-appellants, operators of a diversified farm business in Bates County, Missouri, filed this Chapter 11 reorganization petition for relief on February 5, 1986. Debtors raise cattle and hogs for sale and have extensive row crops. At the time of their Chapter 11 filing, debtors owned about 1,000 acres and rented several additional tracts on which they farmed.

Debtors' schedules showed assets of $1,442,800.00 and liabilities of $1,227,000.14 in secured debts and $100,615.98 in unsecured debts. Their principal assets were land, cattle, hogs and farm machinery. Their principal creditors were Bates County National Bank ("Bates County") with security interests in motor vehicles, Boatmen's Bank of Butler ("Boatmen's") with a security interest in real estate, Central Production Credit Association ("Central PCA") with security interests in cattle and farm

machinery, and Federal Land Bank with a security interest in real estate.

On February 7, 1986, Central PCA filed a motion for relief from the automatic stay or, in the alternative, for award of adequate protection as to Central PCA's security interests in debtors' machinery, real estate, livestock and feed truck. After receiving the required documentation from Central PCA, the Bankruptcy Court, by order of March 12, 1986, granted Central PCA relief from the automatic stay unless adequate protection was timely conferred. On May 6, 1986, the Bankruptcy Court ordered debtors to pay adequate protection to Central PCA. This order was entered into by agreement between debtors and Central PCA. The order provided that Central PCA was to receive: $12,189.96 for adequate protection through April 30, 1986, and $134.85 per day thereafter; a first lien interest on all unsecured hogs, sows, and proceeds, products and offspring of these animals; and a lien on all calves and offspring of cattle born after February 5, 1986. Central PCA received the $12,189.69 payment, but debtors are in arrears on the amount accruing after April 30, 1986.

On February 25, 1986, the Bankruptcy Court held a hearing regarding preliminary plan review. Debtors' former counsel, although duly notified, did not appear, but sent in his place "local counsel" who was uninformed as to the nature of any proposed plan. The Court then directed, by order dated February 28, 1986, that debtors file a disclosure statement and a plan within 30 days from February 25, 1986.

The required plan and disclosure statement were filed on March 31, 1986. A hearing on confirmation of the plan was set for May 19, 1986. On May 14, 1986, Central PCA filed its written objections to the debtors' plan and disclosure statement. At the May 19th hearing, it was determined that there were no actual impaired class of creditors that would assent to the plan. Also at the hearing, debtors requested 20 days to file a liquidation plan. On June 12, 1986, the Court entered a written order denying confirmation of the plan, which included findings that: (1) debtors had not filed a liquidation plan within the 20 days requested; and (2) debtors' (now former)

counsel's acts and omissions were sufficient to deny his application for appointment as debtors' counsel.

However, on June 9, 1986, debtors' present counsel entered his appearance and filed an amended plan of reorganization. This plan made only very minor changes in the treatment of two classes of creditors and failed to list a secured creditor. Central PCA filed its motion to dismiss on June 27, 1986. Debtors filed their suggestions in opposition, and the matter was set for hearing on August 29, 1986.

At the August 29, 1986 hearing, a representative of Central PCA testified as to the value of Central PCA's collateral and the amounts owed by debtors to Central PCA. The Court orally denied Central PCA's motion to dismiss on the condition that debtors file within 14 days an amended plan and disclosure statement, and file "written indications of creditors" representing an actual impaired class that they would assent to the plan. A written order was filed on September 3, 1986 reflecting these conditions.

On September 10, 1986, counsel for debtors sent a letter to the Court claiming that John Deere Company represented an actual impaired class and that John Deere would accept the amended plan. This plan was filed on September 11, 1986. Debtors did not file an amended disclosure statement.

On September 26, 1986, Central PCA renewed its motion to dismiss based on appellants' failure to file an amended disclosure statement or the required written indications of creditors. The Bankruptcy Court granted Central PCA's motion to dismiss by order dated September 26, 1986, and filed October 7, 1986. On October 2, 1986, debtors filed their suggestions in opposition to Central PCA's motion to dismiss. On October 6, 1986, debtors filed a motion to set aside the order of dismissal and amended the same on October 9, 1986. Central PCA filed its suggestions in opposition, and the matter was set for hearing on December 3, 1986.

At the December 3rd hearing, the Bankruptcy judge heard testimony from a Central PCA witness as to the continued de-

cline in the value of Central PCA's collateral. At this hearing, debtor Estle Cook testified as to his ability to make the payments required under the plan. The Court and counsel for Central PCA also indicated at the hearing that it was their recollection that the Bankruptcy Court's oral order of August 29, 1986, which set forth the conditions that would preclude dismissal, was correctly embodied in the written order filed September 3, 1986. After debtors filed a post-hearing brief, the Bankruptcy Court issued its order, 69 B.R. 235, filed December 15, 1986, dismissing this proceeding based on debtors' failure to present a confirmable plan of reorganization and failure to timely file a disclosure statement as required in the Bankruptcy Court's September 3, 1986 order.

Specifically, the Bankruptcy judge's December 15th order stated:

"This Court formerly, on October 7, 1986, issued its order dismissing the within Chapter 11 proceedings. At that time, the proceedings had pended before the Court for some 8 months since February 5, 1986, without the presentation of a confirmable plan to the Court. The tangled procedural history of the case at that time included a halting and unenthusiastic attempt by erstwhile counsel for the debtors to achieve confirmation of a plan of reorganization. But this attempt failed for failure to attain the positive vote of at least one actual assenting class. The order of the Court denying confirmation of this proposed plan was issued on June 12, 1986, after the case had pended before the Court for some 4 months and had been punctuated by several notable defaults in the performance of former counsel for the debtors. Erstwhile counsel was so convinced that any plan of reorganization was unconfirmable that he proposed then to file a plan of liquidation. The creditor Production Credit Association withheld moving to dismiss for a time on the basis of the promise to file a plan of liquidation.

On June 9, 1986, the current counsel for debtors entered his appearance. This entry of appearance occurred in time for him to assist the debtors in defending the motion of the Production Credit Association to dismiss the within bankruptcy proceedings. After a hearing held on August 29, 1986, in which the movant creditor demonstrated with some fair conclusiveness that it had been significantly prejudiced in its collateral position by reason of the delay, the Court nevertheless, principally for the purpose of granting new counsel an opportunity to develop a confirmable plan, denied the motion to dismiss on condition that an amended disclosure statement, a confirmable plan, and an indication from an impaired class of creditors that they would accept the plan were all filed with the Court within fourteen days. The fourteen days, however, passed without the filing of any amended disclosure statement or any indication of intention by any class of creditors to accept the debtors' plan of reorganization. A second plan of reorganization was filed which, in nearly all material respects, was identical to that which had previously been denied confirmation by the Court. But, by virtue of an added provision, the creditor John Deere Company, being owed a sum only slightly in excess of $2,000, was to be paid immediately after confirmation of the plan. New counsel for the debtor wrote a letter to the Court stating that this new provision had induced John Deere Company to indicate acceptance of the plan. But counsel did not, as the Court had directed as the condition of nondismissal, present any written statement of intention of the creditor itself, and no amended disclosure statement was filed at all....

Therefore, to ensure, beyond any doubt, the maximum of process to debtors, the Court, on ample prior notice, convened its hearing on December 3, 1986, on the debtors' motion to set aside the order of dismissal. In that hearing, the debtors did not succeed in showing that an amended disclosure statement had been timely filed nor that the written statement of a class of creditors as to its intention to accept the plan had been timely filed. But, most crucially, the debtors failed to show that their proposed plan was confirmable. This was

so, not only because of the unconscionable priority of payment offered to the minor creditor John Deere Company in order to induce its acceptance of the plan, but also because the testimony of the debtor Estle Cook in the hearing of December 3, 1986, clearly showed that the plan did not and could not meet the "best interests of the creditor" test.... But, most clearly, the plan which has been proposed is clearly shown by the evidence in the hearing of December 3, 1986, to be infeasible. For, as material, it proposes an initial annual payment to creditors of some $167,000 within 90 days of confirmation of the plan. But the testimony of Mr. Cook in the hearing of December 3, 1986, shows that, as of the current time, when the harvest of the majority of the crops which were intended to produce that $167,000 had been completed, the most optimistic view of the potential value falls nearly $30,000 short of that figure. Further, the evidence clearly shows that another $12,000 is now owed the Production Credit Association in unmet adequate protection obligations. There is no statement or showing that more can be expected within the next 180 days. In order to derive that value, the debtors admit that they would have to sell the livestock which is the security of the Production Credit Association to the extent that that creditor could not be paid out of the property to be liquidated in the 11th year of the plan for the purpose of paying the debts that then remain unpaid. Under these circumstances, the showing of infeasibility is so clear that, even without the procedural defaults of debtors' counsel and the consequent unreasonable delay which has resulted, the Court has no alternative except to grant the motion to dismiss. The continued processing of these Chapter 11 proceedings can only prolong the debtors' agony, result in prejudice to creditors, and create more costs, fees and expenses of litigation to the disadvantage of the debtors as well as creditors."

### Standard of Review

■ The standard of review, as set out in Bankruptcy Rule 8013, is that a reviewing court must accept the Bankruptcy judge's factual findings unless these findings are clearly erroneous. *United States v. United States Gypsum Company*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *First National Bank of Clinton v. Julian*, 383 F.2d 329 (8th Cir.1967); *Kidder Skis International v. Williams*, 60 B.R. 808 (W.D.Mo.1985). *See also In re Neal Pharmacal Co.*, 46 B.R. 721, 722 (E.D.Mo.1984) (Court can only reverse the factual finding of the Bankruptcy court if such finding is clearly erroneous); *In re Amco Products, Inc.*, 50 B.R. 723, 724 (W.D.Mo.1983) (the Bankruptcy court's findings of fact are to be accepted by the district court unless clearly erroneous). A finding of fact is "clearly erroneous" when, although there is evidence to support it, the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Company*, 333 U.S. at 395, 60 S.Ct. at 542, 92 L.Ed. 746; *Kidder Skis International v. Williams*, 60 B.R. at 809. Findings of fact are also considered "clearly erroneous" when they are: (1) not supported by substantial evidence; (2) contrary to the clear preponderance of the evidence; or (3) based upon an erroneous view of the law. *In re Amco Products, Inc.*, 50 B.R. at 724. In appealing an order of the Bankruptcy Court, the burden of proof is upon the party seeking reversal of the Bankruptcy Court's factual findings. *Espiefs v. Settle*, 14 B.R. 280 (D.N.H.1981).

### Discussion

The question before the Court is whether the Bankruptcy Court's determination that the debtors failed to timely file a disclosure statement as required in the Bankruptcy Court's September 3, 1986 order and that the debtors failed to present a confirmable plan was clearly erroneous. Viewing the record under the aforementioned standards, the Court concludes that it is not left with the definite and firm conviction that a mistake has been made.

■ Preliminarily, it should be noted that the question of whether the debtors

presented a confirmable plan and whether the debtors complied with the Bankruptcy Court's September 3, 1986 order are questions of fact which are reversible only if they are clearly erroneous. As to the question of compliance, debtors contend that they had substantially complied with the Bankruptcy Court's oral order of August 29, 1986, and that the written September 3rd order did not accurately reflect what the Bankruptcy judge had actually ordered. Although debtors' counsel admits having received the purported memorialization of the Bankruptcy Court's August 29th oral order, counsel claims that he did not see the order until he later reviewed the file in preparing debtors' opposition to Central PCA's renewed motion to dismiss. The Bankruptcy Court found this explanation unacceptable, and this finding should not be disturbed by this Court. Thus, the Court concludes that the determination that debtors failed to comply with its September 3, 1986 order is not clearly erroneous.

■ Likewise, the Court concludes that the question of whether or not the amended reorganization plan submitted by debtors was confirmable was a question of fact that rested well within the province of the Bankruptcy Court. The Bankruptcy judge had ample hearings on this question and heard the testimony of numerous witnesses, including debtor Estle Cook. After extensive briefings and hearings, the Bankruptcy Judge concluded that the plan submitted was not a feasible one, when viewed in terms of the debtors' resources and the continuing prejudice to the creditors. Having carefully reviewed debtors'-appellants' briefs and the record in this case, the Court cannot conclude that these factual findings by the Bankruptcy Court are clearly erroneous.

Accordingly, it is hereby

ORDERED that the decision by the Bankruptcy Court is affirmed.