**In re J. Kenneth BARTLETT and Mary J. Bartlett, Debtors.**

**The FEDERAL LAND BANK OF COLUMBIA, Appellant,**

v.

**J. Kenneth BARTLETT and Mary J. Bartlett, Appellees.**

No. 87–1103–CIV–5.

United States District Court, E.D. North Carolina, Raleigh Division.

June 28, 1988.

Mark C. Kirby, Faison, Brown, Fletcher & Brough, Raleigh, N.C., for appellant.

Malcolm J. Howard, Howard, Browning, Sams, Poole, Hill & Daniel, Greenville, N.C., for appellees.

## ORDER

JAMES C. FOX, District Judge.

This matter is on appeal from the final Order entered on July 31, 1987, and from the Memorandum Opinion entered on September 11, 1987, in this matter, by the United States Bankruptcy Court, Eastern District of North Carolina. Appellant, the Federal Land Bank of Columbia (hereinafter "Land Bank"), contests the Bankruptcy Court's ruling confirming the debtors' Amended Chapter 12 Plan. Appellant argues that the evidence presented in this case does not support the conclusion that the debtors, J. Kenneth Bartlett and Mary J. Bartlett (hereinafter "Bartletts") will be able to make all payments under the Amended Plan and to comply with the Amended Plan within the meaning of Title 11 U.S.C. Section 1225(a)(6). This Court rules that the evidence on the record does not support a conclusion that the Bartletts will be able to make the payments under the Amended Plan.

The applicable standard of appellate review on an appeal to the United States District Court from a judgment, order or decree of a United States Bankruptcy Court is set out in Bankruptcy Rule 8013, which provides:

## RULE 8013

### DISPOSITION OF APPEAL; WEIGHT ACCORDED BANKRUPTCY JUDGE'S FINDINGS OF FACT

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

A finding of fact is "clearly erroneous" when it is (1) not supported by substantial evidence; (2) contrary to the clear preponderance of evidence; or (3) based upon an erroneous view of the law. *In re Cook*, 72 B.R. 976, 980 (Bankr.W.D.Mo.1987). Whether a debtor will be able to make payments under the plan as required under the applicable provision of the Bankruptcy Code is a factual determination to be made by the bankruptcy court, which is subject to the clearly erroneous standard of review in Bankruptcy Rule 8013. *Id.* Furthermore, in reviewing a bankruptcy case on appeal, a district court can consider only that evidence which was presented before the bankruptcy court and made a part of the record. *In re Tiana Queen Motel, Inc.*, 34 B.R. 357, 361 (Bankr.S.D.N.Y. 1983); *In re Neshaminy Office Building Associates*, 62 B.R. 798, 802 (Bankr.E.D.Pa. 1986).

The evidence to be considered by this Court in determining whether the Amended Plan is confirmable under Section 1225(a), was presented during two confirmation hearings before the Bankruptcy Court and on two schedules of assets and liabilities provided to the Bankruptcy Court by the debtors. This evidence indicates that the debtors have four sources of income: (1) Mrs. Bartlett's non-farm work; (2) row crop production; (3) hog production; and (4) custom/combining work.

The schedules indicate that expected net income from Mrs. Bartlett's non-farming work is $12,400.00 during the first year of the plan, and that the expected net income from production of row crops is $12,655.37. Appellants do not contest these figures.

As to the expected income from custom/combining work, the Bankruptcy Court accepted debtors' "revised" figure at the final confirmation hearing and found that Mr. Bartlett could expect to earn "over" $55,000.00 as gross income during the first year of the plan, with expenses equalling 54.87% of gross income. Using the amount $55,000.00, the Bankruptcy Court concluded that the net income from custom/combining work would be $24,-821.50. Appellants contend that the ex-

pected net income should be $22,564.90, based on the projection of $50,000.00 gross income as presented in the schedules. The Bankruptcy Court's finding, however, is not erroneous because it is based on Mr. Bartlett's testimony at the confirmation hearing on May 20, 1987, that he earned $55,000.00 from combining work in 1986. No evidence was presented, however, to show how much income over $55,000.00, if any, Mr. Bartlett could expect to earn from this activity.

In its Memorandum Opinion, the Bankruptcy Court made no specific finding as to the expected income from hog production during the first year of the Plan. The only statement of expected income from hog production came from Mr. Bartlett's own testimony when he stated that he expected to earn "about $20,000.00" during the first year of the Plan. Appellant contends that other objective evndence indicates that this figure is too high. The evidence presented at the second confirmation hearing shows that under the "Swine Finishing Agreement," the debtors would raise three groups of 950 hogs over a thirteen and one-half month period, and would expect to earn $8.50 per hog after anticipated losses in the number of hogs of 4%. Appellant contends that debtors can hope to earn only $15,504.00 during the first twelve months of the plan because only two groups of hogs will have been sold during that time. (912 × $8.50 × 2 = $15,504.00).

Where the expected income is averaged over the entire thirteen and one-half month period, however, debtors can expect to earn $20,672.00 during the first twelve months of operation under the Agreement.

$$\left( \frac{912 \times \$8.50 \times 3 \times 12}{13.5} = \$20,673.00 \right)$$

The Court notes, however, that the hog operations had not started at the beginning of the Plan year. Accordingly, a small discount must be factored in. The figure of $20,000.00, therefore, does not represent an erroneous finding and could have been used properly by the Bankruptcy Court in determining whether debtors would be able to make payments under the Plan.

Viewed in the light most favorable to the debtors, the evidence on the record shows that debtors can expect net income during the first year of the Amended Plan as follows:

| | | |
|---|---|---|
| 1. | Mrs. Bartlett's non-farm work— | $12,400.00 |
| 2. | Row crop production— | 12,655.37 |
| 3. | Hog production— | 20,000.00 |
| 4. | Custom/combining work— | 24,821.50 |

The expected total net income for the debtors, based on the evidence presented, is $69,876.87.

Expenses to be incurred during the first year of the Plan include $12,266.00 in living costs, not contested by appellant, and payments to be made to creditors and to the trustee totaling $61,296.96. These payments include $55,542.69 in payments of debt and interest, $5,554.27 representing a 10% charge as reimbursement and compensation to creditors, and $200.00 in trustee's fees. Other expenses exist, but are nominal and need not be considered. Total expenses for year one under the Plan, therefore, are $73,562.96. Consequently, based on the evidence presented on the record before the Bankruptcy Court, debtors have an expected negative cash flow during the first year of the Amended Plan of $3,686.09. ($69,876.87 − $73,562.96 = − $3,686.09).

■ Bankruptcy Code Section 1225(a)(6) provides that a Chapter 12 Plan shall be confirmed by the court if, among other things, "the debtor will be able to make all payments under the plan and to comply with the plan." Requiring the debtor to be capable of making such payments provides a feasibility test for confirmation. *See, In re Big Hook Land & Cattle Co.*, 77 B.R. 793 (Bankr.D.Mont.1987). The *Big Hook* Court held that where a debtor's payments under a Chapter 12 plan could not as a practical matter be made, the Chapter 12 Plan was not feasible as required by Section 1225(a)(6). *Id.* at 795. The standard used by the *Big Hook* Court to determine feasibility is similar to the standards applied in Chapter 11 reorganization cases regarding feasibility under Code Section 1129(a)(11). *See Clarkson v. Cook Sales and Service Co., In re Clarkson*, 767 F.2d 417, 420 (8th Cir.1985); *In re Great North-*

*west Recreation Center, Inc.* 74 B.R. 846, 852 (Bankr.D.Mont.1987); *In re VZ Ranch, Inc.*, 69 B.R. 577, 581 (Bankr.D.Mont.1987). The Eighth Circuit Court of Appeals stated in *Clarkson:*

we find that the feasibility test is firmly rooted in predictions based on objective fact. The Second Circuit has declared that the feasibility test contemplates "the probability of actual performance of the provisions of the plan. Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Bergman*, 585 F.2d 1171, 1179 (2nd Cir.1978)

767 F.2d at 420. In Chapter 11 cases, courts have found that where the most optimistic view of the debtors' economic future, based on the debtors' own projections, shows that the debtors' projected income would be insufficient to make all of the plan payments in the first year, confirmation of the Plan must be denied. *See Clarkson*, 767 F.2d at 419–20; *Cook*, 72 B.R. at 980–81; *VZ Ranch*, 69 B.R. at 581–82; *See also In re Agawam Creative Marketing Assoc., Inc.*, 63 B.R. 612, 621–22 (Bankr.D.Mass.1986).

Based on the evidence presented on the record, the Bartletts' projected income during the first year of the plan will not be sufficient to cover the expenses set forth in the Plan. Accordingly, the Amended Plan does not meet the requirements of Title 11 U.S.C. § 1225(a)(6) and cannot be confirmed. The Bankruptcy Court's Order of July 31, 1987, therefore, is REVERSED.

SO ORDERED.