**In re Paul Richard PRETZER, Debtor.**

**Bankruptcy No. B88–2195.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

Feb. 8, 1989.

See also, Bkrtcy., 91 B.R. 428.

Glenn R. Schmitt, Thompson, Hine & Flory, Cleveland, Ohio, for debtor.

Michael V. Demczyk, Akron, Ohio, Chapter 12 Trustee.

Lawrence Reinhold, Rush, N.Y., for John Deere Co.

Michael J. Occhionero, Beachwood, Ohio, for Independence Bank.

Richard C. Kenney, Cleveland, Ohio, for East Ohio Gas Co. and National City Bank.

William J. Kopp, Asst. U.S. Atty., Cleveland, Ohio.

Conrad J. Morganstern, Cleveland, Ohio, U.S. Trustee.

Kenneth J. Nordstrom, Ashland, Ohio, for Production Credit Ass'n.

Arunas P. Bielinis, Cleveland, Ohio, for Ameritrust Co.

Joseph E. Ujczo, Westlake, Ohio, for Eugene Bergessel.

James L. Reed, Cleveland, Ohio, for Firestone Bank.

Kate O'Klok, Asst. Atty. Gen., Columbus, Ohio.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court on the motion of Paul Richard Pretzer (Debtor) to amend judgment, namely, the Court's Order of Dismissal filed on January 3, 1989. Upon review of the motion and the Court's extensive record of the within case, the following constitutes the Court's findings and conclusions pursuant to Rule 7052, Bankr.R.:

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O), with jurisdiction further conferred under 28 U.S.C. § 1334 and General Order No. 84 of this District. The Debtor, a grower of specialty herbs and vegetables, requests a vacation of the Court's order of dismissal based on the Court's failure to enter any findings of fact related to the denial of confirmation of the Debtor's plan, failure of a party-in-interest to establish cause for dismissal, and failure of the parties-in-interest to properly file their motions to dismiss.

### I.

In order to determine the appropriateness of Debtor's request, a review of the history of this Debtor is in order. Debtor first filed a petition under Chapter 11 of the Bankruptcy Code on February 25, 1987 (Case No. B87–613) on the eve of a foreclosure sale scheduled against Debtor's property in Wayne County. This case was dismissed on March 21, 1988 for failure to file a disclosure statement and plan and was closed on April 13, 1988. The Debtor refiled under Chapter 12 on June 15, 1988, again on the eve of foreclosure of the aforementioned property. Debtor timely filed a plan of reorganization. Objections to the plan were filed by the major secured creditors Ameritrust Company N.H. (Ameritrust) and Independence Bank (Independence), by the Internal Revenue Service (IRS), Provident Bank, Eugene Bergkessel, and John Deere Company. Debtor subsequently filed an amended plan and the objections of IRS and John Deere were withdrawn. Coupled with the objections of Ameritrust and Independence were motions to dismiss under §§ 109(g) and 1208(c) [11 U.S.C. §§ 109(g) and 1208(c)] or, in the alternative, relief from stay and abandonment.

Hearing on the Debtor's plan of reorganization originally scheduled for November 17, 1988 was adjourned by the Court to permit the Court to conclude hearings on Debtor's motion to value the interests of certain parties in Debtor's collateral, since resolution of these matters would impact directly on the provisions of the plan.

Ameritrust holds a first mortgage on Debtor's Cleveland Farm property. The indebtedness is now five years in arrears, payments being due since January 15, 1984. The unpaid balance as of October 20, 1988 was $230,128.82 together with interest of $157,378.58 at a rate of 14% per annum from August 31, 1988 for a total of $387,507.40. (*See* Ameritrust Motion for Relief from Stay, Docket #132). Ameritrust's claim was originally filed in the amount of $382,611.94.

Independence holds a promissory note secured by a second mortgage on Debtor's Cleveland Farm property as executed on March 18, 1982. That note is further secured by a pledge of stock owned by the Debtor in two companies. (*See* Motion for Relief from Stay filed by Independence October 21, 1988, Docket #136). At that time the indebtedness to Independence was over two and one-half (2½) years in arrears, demand for payment in full having been made in April, 1986. *Id.* The unpaid balance on October 21, 1988 was $218,137.98 with interest of $129,053.11 for a total claim of $347,191.09. The original claim of Independence was filed in the amount of $270,008.00.

IRS filed an original claim of $55,012.32. Further taxes are due and owing to the Cuyahoga County Treasurer and the Ohio Bureau of Employment Services. The

Debtor acknowledges that considering the large number of secured creditors with overlapping interests and the various tax liens, all of Debtor's property, real and personal, is encumbered. (*See,* Debtor's Brief in Support of Confirmation of First Amended Plan of Reorganization, filed December 9, 1988, Docket # 200).

## II.

A threshold question raised by Ameritrust and Independence and not previously addressed by this Court is whether the Debtor is eligible for relief under Chapter 12. These parties cite § 109(g)(1) [11 U.S.C. § 109(g)(1)] which states:

(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case;

■ These parties note that Debtor filed his Chapter 12 petition within 180 days of the involuntary dismissal of his Chapter 11 petition. They further assert that his failure to file a disclosure statement and plan constitute willful failure to abide by orders of the Court, and provide a basis for dismissal. This Court does not agree. For the current action to be dismissed based on dismissal of prior case for failure of debtor to properly prosecute his case, a finding of willfulness is prerequisite. *See* 11 U.S.C. § 109(g)(1); *In re Arena,* 81 B.R. 851, 16 B.C.D. 1303 (Bankr.E.D.Pa.1988); *In re Ryder,* 75 B.R. 890, 16 B.C.D. 279 (Bankr. W.D.La.1987); *In re Dodge,* 86 B.R. 535 (Bankr.S.D.Ohio 1988). This Court has made no such finding of willfulness. Debtor's inability to propose a disclosure statement and plan, standing alone, does not constitute willful failure to abide by an order of this Court. A party moving for dismissal under § 109(g)(1) has the burden of introducing evidence to support its averment. *In re Key,* 58 B.R. 59, 60 (Bankr.E.

D.Pa.1986). Because no evidence was before the Court to establish the "willful" element, the motion to dismiss pursuant to § 109(g) must be denied. *Id.*

Further bases for dismissal are found in § 1208(c) [11 U.S.C. § 1208(c)] which states that "on request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause...." There follows a nonexclusive list of nine causes for dismissal.

■ The Debtor asserts that, because the motions for dismissal filed by Ameritrust and Independence were attached to these parties' objections to Debtor's plan and were not set for separate hearing, they were never properly before the Court. The Court finds that notice of hearing scheduled for November 17, 1988 on the objections of Ameritrust and Independence to confirmation, motion to dismiss, relief from stay and abandonment was properly served on all parties pursuant to R. 2002. While the notice of adjournment to December 13 referred only to the confirmation hearing, this oversight was technical in nature and did not affect the substantive and due process rights of the parties since all affected parties had received adequate notice of the original hearing and the adjournment.

The Court further calls attention to 11 U.S.C. § 102(1)(A) and (B)(i).

§ 102 Rules of Construction.

In this title—

(1) "after notice and a hearing," or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if—

(i) such a hearing is not requested timely by a party in interest;

■ Sufficient evidence was elicited from the various pleadings, the record, the testimony in the motion to value collateral, and the confirmation hearing for the Court to find that Debtor had no equity in his property and no ability to reorganize and

that dismissal was warranted. The Court in its discretion found that no further hearings on the motion to dismiss, as filed by Ameritrust and Independence, were required under the circumstances of this case. Debtor states in his motion that under 11 U.S.C. § 1208 the Court may not dismiss the debtor's case on its own motion. The Court calls attention to § 105(a) [11 U.S.C. § 105(a)], as amended by the Bankruptcy Act of 1986, which clarified the Court's "sua sponte" powers as follows:

§ 105 Power of Court.

(a) .... No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The Debtor next alleges that no party in interest has established cause for dismissal, and he refers to § 1208(c)(5) [11 U.S.C. § 1208(c)(5)] which provides one cause for dismissal:

(5) denial of confirmation under section 1225 of this Title and denial of a request made for additional time for filing another plan or a modification of a plan;

In the instant case Debtor filed one plan, modified it prior to confirmation and has not sought additional time to file another plan. Since this cause for dismissal sets forth two conjunctive requirements and the second has not been met, Debtor asserts that cause for dismissal under § 1208(c)(5) has not been established.

The Court notes that neither the Court's bench ruling nor the order of dismissal bases dismissal on § 1208(c)(5). The Court will nevertheless address Debtor's argument. The legislative history to Chapter 12 reveals that this new chapter was established in 1986 as an alternative for family farmers who exceeded the debt limitations of Chapter 13 and who found Chapter 11 too expensive and unworkable. Two provisions of Chapter 12 which distinguish it from Chapter 11 are the elimination of the need for a disclosure statement and a shorter period in which to file a plan.

Senator Grassley, one of the sponsors of the Chapter 12 legislation, stated:

Importantly, the new subtitle [Chapter 12] ensures that the bankruptcy system will not be abused. Earlier versions of the new chapter allowed a former debtor 240 days to file a plan. During this time collateral could deteriorate without the promise of a confirmable reorganization plan. To address this problem, the exclusive period has been reduced to 90 days in the conference approved bill.

If the time limits are not met, the case will be dismissed and cannot be refiled. This will be a powerful incentive to get these cases moving, rather than languishing in the courts....

132 Cong.Rec. § 15075 (daily id. Oct. 3, 1986) (statement of Sen. Grassley).

In a further effort to expedite implementation of Chapter 12 plans, § 1224 [11 U.S.C. § 1224] contemplates expedited notice of a hearing on the plan and conclusion of the hearing not later than 45 days after the filing of the plan unless the time is extended for cause. The Conference Report indicates that this exception of extension for cause should be used sparingly "in order to facilitate the proper operation of Chapter 12—which proper operation depends on prompt action." (H.R.Conf.Rep. No. 99–958, 99th Cong. 2nd Sess. 50 (1986) U.S. Code Cong. & Admin.News 1986, pp. 5227, 5251).

While the Family Farmer Act was passed to allow family farmers "a fighting chance to reorganize their debts," 132 Cong.Rec. at § 15075, it was also structured to require debtors to speedily confirm a plan of reorganization. The failure of a debtor to request additional time for filing further plans or modifications cannot be used by the debtor as a way to prolong its protection under Chapter 12 when there is no reasonable likelihood of reorganization. Such an action would constitute abuse of the bankruptcy system.

While a motion to extend time for filing a new plan is a proper motion, the legislative history gives no guidelines as to when such

a motion is proper. *In re Bentson,* 74 B.R. 56, 15 B.C.D. 1320 (Bankr.D.Minn.1987). The *Bentson* court set forth several criteria for deciding whether to grant an extension. *Inter alia,* that court noted, "A debtor's cash flow projections for the initial plan must also have made a prima facie showing that reorganization is possible. Chapter 12 will not be used as a delay technique." 74 B.R. at 58. This Court agrees with that criterion. Although Debtor made a good faith effort to propose a workable plan, this Court has found that Debtor has not made a prima facie showing that reorganization is possible.

■ This Court bases its dismissal under § 1208(c)(9), continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation, [11 U.S.C. § 1208(c)(9) ] on the following findings:

1. There is a lack of feasibility of the plan based, *inter alia,* on unreasonable extended pay-out commencement periods and the highly speculative nature of Debtor's cash flow projections.

2. All of Debtor's assets are encumbered and debts of interest and unpaid taxes continue to accrue.

3. Debtor has no source of funding of his plan other than his cash flow from farming operations and rental of his duplex. Most family farm reorganizations, to be successful, will involve the sale of unnecessary property, thereby scaling down their farm operations. H.R.Rep. No. 958, 99th Cong., 2nd Sess. 50 (1986) U.S.Code Cong. & Admin.News 1986, p. 5251. Such is not the case here. Debtor has made attempts to sell his duplex but has been unsuccessful. (*See,* Deposition of the Debtor, October 19, 1988, p. 67, L. 18–23).

4. Debtor has had the protection of the Court for the major portion of two years and has been unable to generate sufficient cash flow during this period to service its debts or develop a workable plan of reorganization.

Debtor had no income for 1984, 1985, 1986. He did not file tax returns for those years. *Id.,* p. 46.

While he was in Chapter 11, Debtor filed operating reports showing the following income:

| Operating Period Ending: | | Income |
|---|---|---|
| 1. | 4/30/87 | $ 3,000.00 |
| 2. | 5/31/87 | 8,000.00 |
| 3. | 6/30/87 | 9,000.00 |
| 4. | 7/31/87 | 4,490.00 |
| 5. | 8/31/87 | 2,349.60 |
| 6. | 9/30/87 | 787.55 |
| 7. | 10/30/87 | 2,099.49 |
| 8. | 11/30/87 | 1,932.48 |
| 9. | 12/30/87 | 373.86 |
| 10. | 1/30/88 | 3,448.59 |
| Total for 10 months: | | $13,500.00 |

Income in the Chapter 12 was as follows:

| Operating Period Ending: | | Income |
|---|---|---|
| 1. | 6/30/88 | $1,499.64 |
| 2. | 7/31/88 | 4,496.38 |
| 3. | 8/31/88 | 3,048.13 |
| 4. | 9/30/88 | 4,753.79 |
| 5. | 10/31/88 | 6,899.86 |
| Total for 5 months: | | $5,608.78 |

There is no evidence in the history of this Debtor on which the Court can rely to determine that there is any reasonable likelihood that this Debtor can be rehabilitated.

### III.

The Court is mindful of the hundred-year history of the Debtor's farm and the valiant efforts the Debtor has made to preserve it. The Debtor may not, however, continue to speculate with the secured creditors' money. *In re White,* 36 B.R. 199, 11 B.C.D. 493 (Bankr.Kan.1983). The debt to Ameritrust has been in arrears since 1984, and that of Independence since 1986. As stated by Senator Thurmond, "When administering this Chapter 12, the courts should strive to perserve [sic] this equity balance between creditors' and debtors' rights." (132 Cong.Rec. § 10575 supra, remarks of Sen. Thurmond). Accordingly, Debtor's motion to amend judgment is denied.

IT IS SO ORDERED.