**In re Gerald A. BUTLER, Debtor.**

**Bankruptcy No. HE 88-54M.**

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

June 9, 1989.

Gerald Coleman, West Memphis, Ark., for Farm Credit Bank/St. Louis.

Charles W. Baker, Little Rock, Ark., for debtor.

A.L. Tenney, Little Rock, Ark., Chapter 12 Trustee.

John D. Bridgforth, Forrest City, Ark., for First Nat. Bank of Eastern Arkansas.

ORDER

JAMES G. MIXON, Bankruptcy Judge.

On March 25, 1988, Gerald A. Butler filed a voluntary petition for relief under the provisions of chapter 12 of the United States Bankruptcy Code. The debtor's first proposed plan of reorganization was denied confirmation on November 4, 1988. 97 B.R. 508. The debtor filed an amended plan, and Farm Credit Bank of St. Louis (Farm Credit) and First National Bank of

Eastern Arkansas (First National) objected to confirmation of the plan. A confirmation hearing was held on January 3, 1989, and the Court took the matter under advisement. On May 2, 1989, First National filed a motion to dismiss the debtor's entire case, and the motion was taken under advisement pending a decision on confirmation.

The issues to be determined are (1) whether the debtor's amended plan is feasible, and (2) whether the debtor is capable of effectuating any plan of reorganization. The matters before the Court are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has jurisdiction to enter a final judgment.

### Feasibility

For a chapter 12 plan to be confirmed, the debtor must establish that he will be "able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). To determine the feasibility of a plan, the Court must ascertain the "probability of actual performance of the provisions of the plan." *Clarkson v. Cooke Sales & Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir.1985); *In re Konzak*, 78 B.R. 990, 993 (Bankr.D.N.D. 1987).

▮▮▮ The purpose of chapter 12 is to promote the reorganization of family farmers, and the Court gives the debtor the benefit of the doubt on the issue of feasibility. *In re Snider Farms, Inc.*, 83 B.R. 1003, 1013 (Bankr.N.D.Ind.1988). The debtor is not required to guarantee the ultimate success of his plan, but only to provide a reasonable assurance that the plan can be effectuated. *Id.* at 1011. However, in this case, even by taking the most optimistic view of the debtor's economic future, the debtor's projected income will be insufficient to fund the plan in the first year. *See Federal Land Bank of Columbia v. Bartlett (In re Bartlett)*, 92 B.R. 142, 144 (E.D.N.C.1988).

The debtor testified that, in 1989, he intended to plant 40 acres of wheat, 210 acres of soybeans and 65 acres of rice. Other than for the wheat crop, neither the plan nor the debtor's testimony specifically projected 1989 income from these crops; therefore, the Court must examine the debtor's historical yields and performance to estimate his 1989 income and expenses. This task is complicated by the facts that the debtor did not have any figures for his 1984–86 crop yields, that he suffered a total crop failure in 1987, and that 86% of his 1988 crop income consisted of disaster payments and crop insurance. The debtor filed operating reports for the eleven-month period from June 1988 to April 1989, which apparently include most, if not all, income from his 1988 crop.

The debtor testified that he expected approximately $3,895.00 income from his wheat crop. He testified that he had never farmed this particular acreage, but that he lost most of his wheat crop to flooding in 1988. Even though the debtor testified that he did not have any figures for his soybean yields, First National's lending records indicated that the debtor reported an average soybean yield of 15.67 bushels an acre for 1983 to 1985. The debtor testified previously that he anticipated 1988 yields of 25 bushels an acre, but his operating reports indicate receipts of only $664.21 from the sale of 170 acres of soybeans from the 1988 crop and approximately $15,-377.50 in crop insurance and disaster payments.[1] It is apparent that the debtor was unable to attain his 1988 projection; nevertheless, for purposes of estimating his 1989 income, the Court will assume a 24% increase in his soybean income since he intends to plant 24% more acres. His 1989 estimated income from his soybean crop will be $19,891.72. The debtor's operating reports indicate approximately $16,457.41[2] income from his 1988 rice crop, consisting of crop sales, crop insurance and disaster payments. He has projected no change in

---

1. Since these figures were not broken down on the various operating reports, the amounts were divided evenly between the crops for purposes of these computations.

2. *See supra* note 1.

his rice crop for 1989. In 1988, the debtor received outside income of approximately $1,105.44 a year from the Brinkley Fire Department and $1,255.30 from odd jobs. Assuming he receives comparable outside income in 1989, his total estimated income for 1989 will be $42,604.87.

According to the debtor's operating reports for eleven months, his operating expenses for producing his 1988 crop were $16,309.42. Although the debtor provided no "per acre" production cost estimates for the soybean and rice crops, he testified that he needed $17,000.00 to $20,000.00 to finance his 1989 crop. The Court will estimate his 1989 crop expenses at $19,000.00. The debtor's operating reports show average living expenses of $341.49 a month. The Court will assume that the debtor's living expenses will not increase in 1989 and estimate the expenses to be $4,097.88.

Subtracting the debtor's operating and living expenses from his income would leave $19,506.90 available to fund a plan of reorganization. The debtor's amended plan proposes that the following payments be made under the plan in 1989:

| Creditor | Amount | Plan Provision |
|---|---|---|
| Farm Credit | $ 4,907.37 | ¶ 4.04 |
| First National | 8,509.96 | ¶ 4.03 |
| Internal Revenue Service | 3,346.33 | ¶ 4.02 [3] |
| State of Arkansas | 1,333.33 | ¶ 4.02 [4] |
| Trustee's Fee | 1,810.00 | ¶ 4.01,5.04,7.03 |
| Total | $19,906.99 | |
| Available to Fund Plan | 19,506.99 | |
| 1989 Deficit | $ 400.00 | |

The debtor's plan also proposes that sufficient 1989 earnings will be retained to finance the 1990 crop rather than requiring the debtor to obtain a crop loan. However, it does not appear from the above calculations that there will be any retained earnings at the end of 1989.

Farming is an unpredictable business with many variables, including commodity prices, crop yields and weather conditions. If a farmer begins operating in a precarious financial position, any adverse change in the variables can destroy his chances of success. A plan based on unduly optimistic and highly speculative assumptions, with no cushion for adversity, would not survive a negative swing in any variable. *In re Snider Farms, Inc.*, 83 B.R. at 1013–14; *In re Konzak*, 78 B.R. at 994. The debtor's own figures portend an unsuccessful plan and it is questionable whether it is reasonable to rely on debtor's figures since they are not supported by the historical production figures.

As the Eighth Circuit Court of Appeals stated in *Clarkson v. Cooke Sales & Service Co. (In re Clarkson)*, 767 F.2d at 420:

Although we sympathize with the [debtors], we find that the feasibility test is firmly rooted in predictions based on objective fact.... ["]Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Bergman*, 585 F.2d 1171, 1179 (2d Cir. 1978).

The evidence is that the debtor will never be able to make the proposed payments to creditors, and confirmation of the amended plan must be denied.

### Dismissal

First National has asked the Court to dismiss the debtor's case "for cause" under 11 U.S.C. § 1208(c). This section provides that a case may be dismissed for cause, including "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1208(c)(9). This debtor has operated its business under the shield of the Bankruptcy Court for over a year, while the creditors have received no payments. The Court cannot allow the creditors' positions to continue to erode if no possibility of reorganization exists for this debtor. *Clarkson v. Cooke Sales & Service Co. (In re Clarkson)*, 767 F.2d at 420. *See In re*

---

**3.** $10,039.00 claim paid over three-year life of plan.

**4.** $4,000.00 claim paid over three-year life of plan.

*Pretzer,* 96 B.R. 790, 794 (Bankr.N.D.Ohio 1989).

The debtor's first plan was denied confirmation, the debtor has no realistic chance of making the payments necessary to fund his amended plan, and it does not appear that any plan of reorganization would be feasible. *See Euerle Farms, Inc. v. State Bank in Eden Valley (In re Euerle Farms, Inc.),* 861 F.2d 1089, 1091 (8th Cir.1988). The yields necessary to support the debtor's plan are not supported by his farming history, and his current farming practices do not provide any assurance of a substantial change in his income. Eighty-six percent of the debtor's 1988 crop income consisted of crop insurance and disaster payments, and as of May 2, 1989, he had not begun preparing the land for planting his 1989 crops. Supporting a farming operation through insurance and disaster payments is not consistent with a chapter 12 reorganization as envisioned by Congress. The lack of a reasonable likelihood that the debtor will be able to reorganize is cause for dismissal. *Euerle Farms, Inc. v. State Bank in Eden Valley (In re Euerle Farms, Inc.),* 861 F.2d at 1092. Therefore, First National's motion to dismiss is granted.

IT IS SO ORDERED.