In re Trayton Junior GOUGH, and Dolores Eve Gough, Debtors.

Bankruptcy No. 95–2803–BKC–3P2.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Dec. 18, 1995.

Walter R. Moon, Orlando, Florida, for C. Victor Butler, Jr.

Richard A. Perry, Ocala, Florida, for debtors.

H. Jack Miller, Jacksonville, Florida, for trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court for confirmation of debtors' Chapter 12 plan. C. Victor Butler, Jr. (Butler), a secured creditor, objected to the plan. The Court heard the objection and received evidence regarding confirmation at a hearing held on November 7, 1995, and the Court now enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Debtors own and operate a citrus growing operation on an 80–acre parcel in Marion County, Florida and a 20–acre parcel in Lake County, Florida. Of the 100 acres, 68 are planted and harvested. Both groves were severally damaged by freezes in 1984 and 1986. Both groves were replanted in 1987 and damaged again by freezes in 1989. (Debtors' Brief p. 1).

2. Debtors filed for relief under Chapter 12 of the Bankruptcy Code on June 14, 1995, and filed their plan on September 20, 1995.

3. Debtors grow in excess of 10 varieties of citrus and have staggered harvest times to spread the risk of weather-related loss. (Debtors' Brief p. 1).

4. Debtors' crop yield for 1994–95 was 3,869 boxes. Debtors' plan projects production for the next three seasons as follows:

| | |
|---|---|
| 1995–96 | 6,125 boxes |
| 1996–97 | 9,465 boxes |
| 1997–98 | 11,815 boxes |

(Debtors' Plan, File Doc. 13).

5. Debtors estimate their production income at $4 per box. (Debtors' Plan, File Doc. 13).

6. Debtors and their son perform all manual labor associated with the citrus pro-

duction. Debtors' estimate their annual maintenance costs at $12,240. Debtors do not maintain crop insurance. (Butler Brief p. 5).

7. Based on their projected crop yield, debtors propose to fund the plan in three annual installments as follows:

$12,000 payment due May 1, 1996
$24,000 payment due May 1, 1997
$30,000 payment due May 1, 1998

(Debtors' Plan, File Doc. 13).

8. Debtors' anticipated income and expenses during the plan are as follows:

|  | 1995–96 | 1996–97 | 1997–98 |
|---|---|---|---|
| Income: |  |  |  |
| Social Security | $ 5,500 | $ 5,500 | $ 5,500 |
| Citrus Crops | $24,500 | $37,860 | $47,260 |
| Expenses: |  |  |  |
| Living | $ 5,760 | $ 5,760 | $ 5,760 |
| Crop Maintenance | $12,240 | $13,600 | $17,000 |

(Debtors' Plan, File Doc. 13).

9. On May 30, 1995, Butler obtained a Summary Final Judgment For Foreclosure against the debtors in the Circuit Court for Marion County, Florida. On July 17, 1995, Butler filed a proof of claim in the amount of $132,748.04. Debtors listed Butler as a secured creditor in the same amount.

10. Debtors' plan provides that Butler will be paid in full with interest at 10 percent per annum. The plan provides that Butler's claim will be negatively amortized during the first year of the plan with Butler receiving only a partial interest payment of $9,072. (Debtor Brief p. 4). Thereafter, the principal and interest which accrues in the first year under the plan is reamortized with Butler receiving $18,144 each year until May 1, 2007, when a balloon of the remaining balance is due. The plan requires the debtors to make payments directly to Butler beyond the life of the plan.

11. Butler filed an objection to confirmation, claiming that the plan is not feasible. Butler also argues that the value he will receive under the plan is less than the amount of his allowed claim.

### CONCLUSIONS OF LAW

Chapter 12 plans are confirmed if they meet the following requirements of 11 U.S.C. § 1225:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C. § 1225(a).

Butler objects to confirmation of debtors' plan pursuant to 11 U.S.C. § 1225(a)(5) and (a)(6).

### *Butler's objection pursuant to § 1225(a)(5)*

■ Butler objects to confirmation of debtors' plan pursuant to 11 U.S.C. § 1225(a)(5), claiming that his claim will not receive full value under the plan. The plan, however, provides that Butler will retain his

lien and that his claim will be paid in full. The plan also utilizes a provision of 11 U.S.C. § 1222(c) which allows debtors to pay a secured creditor beyond the life of the plan. The Court rejects Butler's argument that his claim would not be paid in full and finds that the plan meets the requirements of § 1225(a)(5).

### Feasibility—11 U.S.C. § 1225(a)(6)

Feasibility is fundamentally a fact question which requires the Court to determine the debtors' reasonable probability of payment. *In re Rape*, 104 B.R. 741, 748 (W.D.N.C.1989) (quoting *In re Crowley*, 85 B.R. 76, 78–79 (W.D.Wis.1988)). To meet the feasibility standard of § 1225(a)(6), the debtors must prove the likelihood that they can make all payments required under the plan and comply with the plan.

To promote reorganization attempts of family farmers, the Court gives the debtors the benefit of the doubt on the issue of feasibility. *In re Snider Farms, Inc.*, 83 B.R. 1003, 1013 (Bankr.N.D.Ind.1988). Thus, the Court does not require the debtors to "guarantee the ultimate success of [their] plan, but only to provide a reasonable assurance that the plan can be effectuated." *In re Butler*, 101 B.R. 566, 567 (Bankr.E.D.Ark. 1989).

The law, however, requires the debtors to prove the feasibility of their plan based on objective facts. "The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Rape*, 104 B.R. 741, 749 (W.D.N.C.1989) (quoting *In re Clarkson*, 767 F.2d 417, 420 (8th Cir.1985)). Especially important for Chapter 12 debtors is the feasibility of their market projections. Other courts have cautioned, however, that "[m]arket projections must be supported by some factual basis in order for them to be regarded by the Court as anything more than wishful thinking." *In re Snider Farms, Inc.*, 83 B.R. 1003, 1013 (Bankr.N.D.Ind. 1988).

Thus, to be feasible, a Chapter 12 plan must be more than "technically possible." *In re Foertsch*, 167 B.R. 555, 566 (Bankr.D.N.D.1994). "[I]f 'the most optimistic view of the debtors' economic future, based on debtors' own projections, shows that the debtors' projected income would be insufficient to make all of the plan payments in the first year, confirmation of the plan must be denied.' " *In re Rape*, 104 B.R. 741, 749 (W.D.N.C.1989) (quoting *In re Bartlett*, 92 B.R. 142, 144 (E.D.N.C.1988)).

If debtors' crop yield projections and anticipated social security income meet their expectations, the debtors could technically afford to fund their plan. The feasibility of the plan, however, remains suspect.

Butler asserts several facts to support his argument that the debtors' plan is not feasible. First, the debtors' groves only produced a little over 4,000 boxes of fruit in the 1994–95 season. Butler argues that based on their production history, it is unlikely that debtors will be able to triple their crop yield in a three year period as required by the plan. Secondly, Butler argues that the market price relied on by the debtor is speculative and cannot provide an objective basis for projecting future income. Butler next argues that the debtors failure to maintain crop insurance and their failure to properly maintain their groves is an indication that the debtors' crop yield will decrease rather than increase over the life of the plan.

Butler also argues that the debtors cannot reasonably expect to increase their crop yield when the only labor performed in the planting, maintenance, and harvesting is by the debtors and their son. Finally, Butler argues that the debtors' plan is not feasible because it would require the debtors to survive on $480 a month without increase for the next three years.

In attempts to prove the feasibility of their plan, the debtors produced evidence showing that they have planted an additional 20 acres to be harvested next season. Debtors also testified that they have allotted more money in the plan to be spent on grove maintenance. Debtors further testified that they can survive on $480 per month.

The Court, however, is unpersuaded by debtors' evidence. The facts of this case make it clear that the debtors' projected crop

yield for the next three seasons is overly optimistic. The Court finds that debtors' groves are not capable of producing the projected crop yield income needed to fund the plan. Although the debtors testified that the yield from the additional 20 acres and the increased maintenance on the other planted areas would ensure an increasing crop yield, an adverse expert witness testified that the debtors' groves are in poor condition, and that the young trees on the newly planted parcel will not be capable of producing fruit in time to meet the first projected increase.

The Court also finds that it is not feasible for the debtors to expect a larger production when they perform all of the manual labor themselves. A large citrus production necessitates more man power or mechanized capability to plant, maintain, and harvest the fruit.

Finally, the Court finds that it is highly impractical to assume debtors can support themselves, two residences, and two automobiles on $480 a month for the next three years. Debtors' plan leaves them no flexibility for health or other emergencies and erroneously assumes that the cost of living will not increase over the next three years.

The Court finds that the plan is not feasible and cannot be confirmed pursuant to 11 U.S.C. § 1225(a)(6).

### Conclusion

Butler's objection to confirmation pursuant to 11 U.S.C. § 1225(a)(5) is overruled because Butler will retain his lien and the plan provided that Butler would have received the full value of his claim. Butler's objection to confirmation pursuant to 11 U.S.C. § 1225(a)(6) is sustained because the plan is not feasible.

By separate order, the Court will sustain Butler's objection to confirmation, deny confirmation of the plan, and dismiss the case.